242 P.3d 866 (2010)
In the Matter of the Personal Restraint Petition of Shawn Dominique FRANCIS, Petitioner.
No. 82619-6.
Supreme Court of Washington, En Banc.
Argued May 13, 2010.
Decided November 18, 2010.
*868 Steven Witchley, Ellis Holmes & Witchley PLLC, Seattle, WA, for Petitioner.
Michelle Luna-Green, Pierce Co. Pros. Attorney, Thomas Charles Roberts, Attorney at Law, Tacoma, WA, for Respondent.
SANDERS, J.
¶ 1 We are asked to decide whether double jeopardy protection is violated where Shawn Francis pleaded guilty to felony murder of Jason Lucas, first degree attempted robbery of D'Ann Jacobsen, and the second degree assault of D'Ann Jacobsen, all arising from the same string of conduct. Because the State expressly relied on the second degree assault conduct to elevate the attempted robbery to the first degree when it charged the crimes, convictions on both charges violate double jeopardy protections. We vacate the lesser second degree assault charge and remand for resentencing consistent with our holding here.

FACTS
¶ 2 Shawn Francis, accompanied by Quinn Spaulding, attacked Jason Lucas and D'Ann Jacobsen with a baseball bat in order to steal $2,000 Lucas and Jacobsen had received from Jacobsen's parents. Francis failed to take any money because he fled when another person approached. Lucas died of his injuries.
¶ 3 Francis pleaded guilty to first degree felony murder of Lucas, second degree assault of Jacobsen, and attempted first degree robbery of Jacobsen. The trial court sentenced him to 347 months' imprisonment on the felony murder charge, 14 months on the assault, and 40.5 months on the robbery, all sentences to run concurrently.
¶ 4 Francis filed a personal restraint petition in the Court of Appeals. The Court of Appeals dismissed, asserting double jeopardy violations are waived upon a guilty plea. We granted discretionary review. In re Pers. Restraint of Francis, 166 Wash.2d 1015, 213 P.3d 930 (2009).

ANALYSIS

I. Did Francis waive a double jeopardy challenge when he pleaded guilty?
¶ 5 The State argues Francis waived any double jeopardy challenge when *869 he pleaded guilty to all three offenses. However, the mere act of pleading guilty does not waive a double jeopardy challenge.[1] A guilty plea, by its nature, admits factual guiltand thus waives any challenge on that ground. State v. Knight, 162 Wash.2d 806, 811, 174 P.3d 1167 (2008). However, a guilty plea does not waive a challenge to "`the very power of the State to bring the defendant into court to answer the charge brought against him,'" id. (quoting Blackledge v. Perry, 417 U.S. 21, 30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)), nor does it waive a challenge when the court enters multiple convictions or sentences for the same offense, State v. Hughes, 166 Wash.2d 675, 681 n. 5, 212 P.3d 558 (2009). Here, Francis challenges the latterthe court's ability to enter convictions and sentence him for duplicative charges.[2] He did not waive that challenge by pleading guilty.

II. Did Francis' convictions violate double jeopardy?
¶ 6 "The proper interpretation and application of the double jeopardy clause is a question of law which we review de novo." Knight, 162 Wash.2d at 810, 174 P.3d 1167 (citing State v. Womac, 160 Wash.2d 643, 649, 160 P.3d 40 (2007)).

a. Did the court violate double jeopardy here when it entered convictions for both attempted first degree robbery and second degree assault?
¶ 7 A court entering multiple convictions for the same offense violates double jeopardy. State v. Freeman, 153 Wash.2d 765, 770-71, 108 P.3d 753 (2005). Because the legislature has the power to define offenses, whether two offenses are separate offenses hinges upon whether the legislature intended them to be separate. See id. at 771-72, 108 P.3d 753.
¶ 8 To determine whether the legislature intended two separate offenses, we first consider any express or implicit representations of legislative intent. Id. But here that is a dead end; the relevant statutes provide no express or implicit representations. See RCW 9A.28.020; RCW 9A.36.021; RCW 9A.56.190, .200.
¶ 9 So we move to the remaining considerations: (a) the Blockburger[3] test, (b) the merger doctrine, and (c) whether there was an independent purpose or effect for each offense. Freeman, 153 Wash.2d at 772-73, 108 P.3d 753. These considerations inform but do not compel our outcome; the underlying inquiry is still whether the legislature intended the offenses to be the same. Id. at 771-72, 108 P.3d 753. We make this determination on a case by case basis. Id. at 780, 108 P.3d 753.
¶ 10 But first we must consider the nature of the charged offenses. We view the offenses as they were charged. Id. at 772, 108 P.3d 753; accord In re Pers. Restraint of Orange, 152 Wash.2d 795, 817, 100 P.3d 291 (2004). We do not consider the elements of the offenses in the abstract; that is, we do not consider all the ways in which the State could have charged an element of an offense, but rather we consider how the State actually charged the offense.
*870 ¶ 11 Here, Francis' second degree assault conduct was also charged as an element of the first degree robbery charge. The first degree attempted robbery was charged as: "perform[ing] an act which was a substantial step toward the taking of personal property with intent to steal from the person or in the presence of D'Ann Jacobsen, against such person's will by use or threatened use of immediate force, violence, or fear of injury to D'Ann Jacobsen, and in the commission thereof, or in immediate flight therefrom Shawn Dominique Francis inflicted bodily injury upon D'Ann Jacobsen...." In re Pers. Restraint of Shawn Francis (Pers. Restraint Pet. (PRP), Ex. D at 2-3 (Wash.Ct.App., No. 37489-7)) (emphasis added). The State charged the second degree assault as "unlawfully and feloniously assault[ing] D'Ann Jacobsen with a deadly weapon, to-wit: a baseball bat...." PRP, Ex. D at 2. The State expressly used the second degree assault conduct to elevate Francis' attempted robbery charge to the first degree.
¶ 12 Based upon these facts, the merger doctrine is the most compelling consideration to determine legislative intent.[4] Francis caused Jacobsen bodily injury. The State charged that conduct as the second degree assault. The State also used that conduct to elevate Francis' attempted robbery to the first degree. "Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." Freeman, 153 Wash.2d at 772-73, 108 P.3d 753. We thus presume here that the legislature intended to punish Francis' second degree assault through a greater sentence for the attempted first degree robbery.
¶ 13 This conclusion is further supported by the final Freeman consideration, whether the offenses Francis committed had an independent purpose or effect. Id. "[O]ffenses may in fact be separate when there is a separate injury to the `the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element.'" Id. at 778-79, 108 P.3d 753 (quoting State v. Frohs, 83 Wash.App. 803, 807, 924 P.2d 384 (1996)). Here, the sole purpose of the second degree assault was to facilitate the attempted robbery. The assault was not "separate and distinct" from the attempted robbery; it was incidental to it. Id.
¶ 14 Because, as charged, Francis' conviction for second degree assault merges into his conviction for attempted first degree robbery, the trial court violated double jeopardy when it entered convictions on both offenses. We thus vacate the conviction on the lesser offensethe second degree assault.
¶ 15 The State makes several arguments to circumvent this conclusion by encouraging the court to look to how the State could have charged Francis. However, our inquiry under double jeopardy limits us to how the State actually charged him.
¶ 16 The State argues, because Francis is charged with attempted first degree robbery, it need not prove that he actually caused bodily injuryi.e., the assault conduct, but only that he intended and took a substantial step to cause bodily injury. The State asserts attempted first degree robbery was completed prior to the second degree assault conduct when Francis lay in wait for the victims.
¶ 17 The State's argument is inspired by State v. Beals, 100 Wash.App. 189, 194, 997 P.2d 941 (2000) ("The attempted robbery was complete as soon as Beals formed the requisite intent [for attempted first degree robbery] *871 and took the hammer in hand, and is distinguishable from Beals' act of hitting Perry on the head to complete the assault."), but Beals is inapposite. The issue in Beals was whether there was a substantial step to support the attempted first degree robbery other than the assault conduct. Id. at 193-95, 997 P.2d 941. Here, regardless of the substantial step, the assault conduct is necessary to raise the attempted robbery to the first degree. The State charged Francis with attempted first degree robbery pursuant to RCW 9A.56.200(1)(a)(iii) because he actually inflicted bodily injury on Jacobsen. The assault conduct is the sole basis charged for raising the attempted robbery to the first degree; the apparent legislative intent is to punish both crimes with a greater sentence for the greater offense. Freeman, 153 Wash.2d at 772-73, 108 P.3d 753.[5]
¶ 18 Permitting the State to rewrite on appeal how it charged the offenses would result in Francis' being convicted for a crime to which he did not plead guilty. An attempted robbery where a defendant actually resorted to violence as the robbery progressed is a different set of facts than an attempted robbery where the defendant, upon taking a substantial step such as lying in wait, already intended to cause bodily harm. Francis was given notice of and pleaded guilty to attempted robbery under the first set of facts. The second set, which the State encourages the court to view as interchangeable, was never charged nor does it appear Francis was guilty of those facts based upon his explanation of the crime.
¶ 19 The State also argues the second degree assault conduct need not be part of the attempted first degree robbery charge because Francis was armed with and/or displayed a deadly weapon (a baseball bat) in his attempt, and thus his attempted robbery is alternatively elevated to the first degree pursuant to RCW 9A.56.200(1)(a)(i) and (ii). But again, the State didn't charge Francis with attempted first degree robbery based upon those alternative grounds, but rather based upon the infliction of bodily injury, RCW 9A.56.200(1)(a)(iii). The State has great latitude and discretion when it chooses what it will charge a defendant. But once the State has charged the defendant, short of a timely amendment, the State is stuck with what it chose. The charging document provides the defendant notice of the accusations as charged, and the State is obliged to prove them as charged. This court is not privy to what strategic or evidentiary advantages the State may have considered when it chose to charge Francis with attempted first degree robbery based upon inflicting bodily injury on Jacobsen. Nor would that be relevant to the court's inquiry. All that matters on appeal is whether the attempted first degree robbery and second degree assault charges merge as they were charged. Because the attempted robbery charge is elevated to first degree by the assault conduct, the two convictions merge.

b. Did the court violate double jeopardy when it entered convictions for both the attempted robbery of Jacobsen and the felony murder of Lucas?
¶ 20 If Francis had pleaded to the attempted robbery of Lucas and felony murder of Lucas, double jeopardy would preclude conviction on the attempted robbery count. The killing "had no purpose or intent outside of accomplishing the robbery" and therefore the attempted robbery would merge into the felony murder. State v. Williams, 131 Wash.App. 488, 499, 128 P.3d 98 (2006) (addressing the merger of attempted robbery and felony murder of the same *872 victim); see also State v. Vladovic, 99 Wash.2d 413, 421, 662 P.2d 853 (1983) (mirroring the above analysis in the context of kidnapping and robbery).
¶ 21 Here, however, Francis pleaded guilty to the felony murder of Lucas and attempted robbery of Jacobsentwo different victims. The State argues Francis intended to rob both Lucas and Jacobsen by taking property from each of their persons, so two separate crimes existed and there is no double jeopardy violation. Francis argues he intended only to steal one item of property jointly held by Lucas and Jacobsen$2,000 Jacobsen had received from her parentsand under our holding in State v. Tvedt, 153 Wash.2d 705, 107 P.3d 728 (2005), only one count of robbery can be charged for any one piece of property.
¶ 22 In Tvedt we explained double jeopardy protects an individual from being convicted of more than one count of a crime for the same "`unit of prosecution.'" Id. at 710, 107 P.3d 728 (quoting State v. Westling, 145 Wash.2d 607, 610, 40 P.3d 669 (2002)). The unit of prosecution is the essential conduct that makes up the core of the offense. The unit of prosecution for robbery has two components: a crime against property and a crime against a person. Id. at 711, 107 P.3d 728. One unit of prosecution for robbery exists for "each separate forcible taking of property from or from the presence of a person having an ownership, representative, or possessory interest in the property, against the person's will." Id. at 714-15, 107 P.3d 728. Thus, a single count of robbery results from taking one or more items from one person or taking one item in the presence of multiple people, even if each has an interest in that item. Id. at 720, 107 P.3d 728.
¶ 23 Francis argues the $2,000 is one item of property and thus can constitute only one count of attempted robbery here. But a sum of money, even if that sum is owned by the same individual or entity, can constitute divisible property for the purpose of multiple robbery counts. In State v. Rupe, 101 Wash.2d 664, 693, 683 P.2d 571 (1984), a defendant took money from the tills of two individual cashiers. The defendant argued that the sum of money he took was collectively the bank's money and thus constituted one item of property. Id. This court rejected that argument because each individual teller had money in her till that was in her possession and control and that the defendant took by force. Id. The money was divisible property taken by the defendant from separate individuals, resulting in multiple robberies. Id. Similarly, had Francis taken money from the person of both Lucas and Jacobsen, he would be guilty of two counts of robbery. See Rupe, 101 Wash.2d at 693, 683 P.2d 571. If he intended to do so, he is guilty of two counts of attempted robbery. Francis' argument that Tvedt precludes two robbery charges here fails.
¶ 24 Furthermore, two attempted robbery charges are permitted here regardless of whether the $2,000 is considered one piece of property. Even if Lucas or Jacobsen held the entire, undivided $2,000 and Francis was aware the entire sum was only on the person of one of them, he would still be guilty of two counts of attempted robbery. Attempted robbery requires that Francis intended to take property from an individual with the use or threatened use of force. See RCW 9A.28.020(1); RCW 9A.56.190. If Francis intended to take the $2,000 and intended to take it from the person of Lucas or Jacobsenwhomever he discovered was carrying ithe would be guilty of two counts of attempted robbery, even though it would be factually impossible that both individuals had the $2,000 on their person. Factual impossibility is no defense to an attempt crime, RCW 9A.28.020(2), and if Francis intended to take the $2,000 by force from whomever had it, he satisfied the requirements for attempted robbery as to both Lucas and Jacobsen.
¶ 25 That scenario best fits the facts and charges provided in the plea statement and second amended information here. The purpose of the crime was to steal the $2,000 Lucas and Jacobsen received from her parentsregardless of who carried it. PRP, Ex. A, ¶ 13; see also PRP at 27-28 (Francis characterizing the crime as "the attempted taking of money jointly controlled by Lucas and Jacobsen."). Francis acknowledged he took "a substantial step toward robbing [Jacobsen] *873 and [Lucas]." PRP, Ex. A, ¶ 13. Furthermore, Francis concedes he intended to rob Lucas and he pleaded guilty to the attempted robbery charge against Jacobsen: "[I] perform[ed] a substantial step toward the taking of personal property with intent to steal from the person of or in the presence of D'Ann Jacobsen, against D'Ann Jacobsens [sic] will by use of force, violence or fear and in the commission of the offense did inflict bodily injury on D'Ann Jacobsen." PRP, Ex. A, ¶ 6. Also, Francis' conduct was envisioned as two attempted robberies from the beginning; the prosecutor dropped the attempted robbery count against Lucas from the second amended complaint because it would have merged into the felony murder upon conviction. PRP, Ex. D, Prosecutor's Statement re: Second Am. Information.
¶ 26 Francis' attempt on appeal to reframe his offenses as only an attempt to rob Lucas contradicts the most natural reading of the plea statement[6] and impermissibly expands the record on appeal. A double jeopardy challenge does not permit a defendant to supplement the record. See Knight, 162 Wash.2d at 811, 174 P.3d 1167 (citing United States v. Broce, 488 U.S. 563, 575-76, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (defendants were precluded from expanding the record to demonstrate their two convictions for conspiracy stemmed from a single conspiracy)). Francis' personal declaration, recharacterizing the crimes, has no bearing here. See Pet'r's Reply Br., Ex. A.
¶ 27 Francis' attempt to recharacterize the facts also ignores a guilty plea admits not only the acts described in the information, but the plea's legal consequence. See Broce, 488 U.S. at 569, 109 S.Ct. 757. In Broce the indictments did not need to expressly state the two charged conspiracies were separate. Id. at 569-70, 109 S.Ct. 757. The separation was inferred when the defendants pleaded guilty to both charges. Doing so waived their right to later challenge that the conspiracies charged were factually one conspiracy. Id. Similarly, by pleading guilty both to the felony murder of Lucas and the attempted robbery of Jacobsen, Francis pleaded guilty to the facts and legal consequence of the chargesthat the attempted robbery of Jacobsen was a distinct offense. He waived his right to argue the robberies of Lucas and Jacobsen are factually the same by now recharacterizing the underlying facts. See id.
¶ 28 In sum, the charged attempted robbery against Jacobsen is legally independent from the felony murder of Lucas and does not violate double jeopardy. Both convictions stand.

III. Remedy
¶ 29 Because Francis' second degree assault conviction violates double jeopardy, we vacate it here and remand to the trial court for resentencing consistent with this holding.
¶ 30 Francis further moves to withdraw his guilty pleas to all three offenses, arguing he did not understand the nature of the offenses. See Pet'r's Reply Br., Ex. A (Decl. of Shawn Francis). A defendant has one year to file such a collateral attack. RCW 10.73.090(1). Judgment was entered on May 30, 1996, and Francis filed his personal restraint petition on February 27, 2008. Francis' motion to withdraw his guilty pleas is untimely and thus denied.
¶ 31 The State argues vacating Francis' second degree assault conviction is impermissible because he cannot challenge individual convictions of his indivisible, multiconviction plea agreement, citing In re the Personal Restraint Petition of Shale, 160 Wash.2d 489, 492-94, 158 P.3d 588 (2007). But our subsequent decision in Knight, 162 Wash.2d 806, 174 P.3d 1167, sets forth the law for this issue.[7] There we unanimously *874 held a defendant could challenge one conviction of an indivisible, multiconviction plea agreement on double jeopardy grounds. Id. We reasoned the double jeopardy violation was the entry of multiple convictions for the same offense, not the guilty pleas themselves, and a defendant could challenge the court's entry of any convictions that violate double jeopardy. See id. The appropriate remedy for a double jeopardy violation is vacating the offending conviction. Id.

CONCLUSION
¶ 32 Because the State expressly used the second degree assault conduct to elevate the attempted robbery charge to first degree, conviction of both offenses violates double jeopardy. We vacate the conviction on the lesser offensethe second degree assault. Francis' other double jeopardy challenge based upon his convictions for the felony murder of Lucas and attempted first degree robbery of Jacobsen fails and both convictions stand. We remand to the trial court for resentencing consistent with this holding.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, and JAMES M. JOHNSON, Justices.
MADSEN, C.J. (concurring)
¶ 33 I agree with the majority that Shawn Francis's convictions for both first degree attempted robbery and second degree assault against D'Ann Jacobsen violate the double jeopardy clauses of the state and federal constitutions, but his convictions for attempted robbery of both Jacobsen and Jason Lucas do not. I also agree that the proper remedy for the constitutional violation is vacation of the second degree assault conviction.
¶ 34 I write separately, however, because the majority's double jeopardy approach departs from settled law in this area.

Discussion
¶ 35 "`"Fixing of penalties or punishments for criminal offenses is a legislative function, and the power of the legislature in that respect is plenary and subject only to constitutional provisions."' State v. Thorne, 129 Wash.2d 736, 767, 921 P.2d 514 (1996) (quoting State v. Mulcare, 189 Wash. 625, 628, 66 P.2d 360 (1937))." State v. Varga, 151 Wash.2d 179, 193-94, 86 P.3d 139 (2004). The issue whether multiple punishments have been unconstitutionally imposed requires, therefore, a determination of what punishments have been authorized by the legislature. State v. Calle, 125 Wash.2d 769, 776, 888 P.2d 155 (1995).
¶ 36 Calle sets forth the general framework for deciding whether the legislature has intended multiple punishments. The court first considers express or implicit legislative intent found in the statutes at issue. Id. at 776, 888 P.2d 155. If there is no clear evidence of intent in the statutes, then a reviewing court turns to principles of statutory construction that may be used to ascertain legislative intent regarding multiple punishments. One of these is the Blockburger test, used to determine whether offenses are the same in law and in fact. Calle, 125 Wash.2d at 777-78, 888 P.2d 155; see Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); State v. Kier, 164 Wash.2d 798, 804, 194 P.3d 212 (2008). Another is the merger doctrine, a doctrine of statutory interpretation that is employed when, to prove *875 an element or degree of a crime, the State must prove conduct that constitutes at least one additional crime. Id. at 804, 194 P.3d 212; State v. Vladovic, 99 Wash.2d 413, 418-20, 662 P.2d 853 (1983); State v. Johnson, 92 Wash.2d 671, 681, 600 P.2d 1249 (1979), disapproved in part by State v. Sweet, 138 Wash.2d 466, 477, 980 P.2d 1223 (1999).
¶ 37 Contrary to the majority, however, there is no stand alone third interpretative test that involves consideration of "whether there was an independent purpose or effect for each offense." Majority at 869. Rather, as explained in Johnson and Vladovic, this is "an exception to the merger doctrine" that applies "if the offenses committed in a particular case have independent purposes or effects," permitting them to "be punished separately" notwithstanding the otherwise apparent application of the merger doctrine. Johnson, 92 Wash.2d at 680, 600 P.2d 1249; Vladovic, 99 Wash.2d at 421, 662 P.2d 853. We recently recognized this very thing in Kier, where the court explained that "even if... two convictions would appear to merge on an abstract level under [the merger doctrine], they may be punished separately if the defendant's particular conduct demonstrates an independent purpose or effect." Kier, 164 Wash.2d at 804, 194 P.3d 212.
¶ 38 For its imprecise summary of interpretive "considerations," the majority relies on State v. Freeman, 153 Wash.2d 765, 772-73, 108 P.3d 753 (2005). Freeman cites a Court of Appeals decision for the premise that "even if two convictions appear to be for the same offense or for charges that would merge," two punishments may be imposed "if there is an independent purpose or effect to each." Id. at 773, 108 P.3d 753 (citing State v. Frohs, 83 Wash.App. 803, 807, 924 P.2d 384 (1996)). But that is imprecise. Rather, the court in Frohs correctly summarized the law set forth in Johnson and reiterated in Vladovic: Under the "`separate and distinct injury' exception to the merger doctrine," "[a]n additional conviction for the `included'[1] crime cannot be allowed to stand unless it involves some injury to the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element." Frohs, 83 Wash.App. at 807, 924 P.2d 384 (citing Johnson, 92 Wash.2d at 680, 600 P.2d 1249) (emphasis added).
¶ 39 The majority correctly stresses that in the end the concern is legislative intent. But I fear that by setting up its three "considerations" the majority will be construed as establishing a freestanding interpretative test that rests upon a misunderstanding of the decisions in Johnson and Vladovic, and the Court of Appeals' analysis in Frohs. Instead, we should, as the court did in Kier, confine the "independent purpose or effect" inquiry to its proper contextthe exception to merger.[2]
¶ 40 On another point, the majority says that we determine the double jeopardy issue by considering the offenses as charged. This is also an imprecise reading of settled case law. What we have said is that the double jeopardy inquiry is into the offenses as charged and proved. See, e.g., Freeman, 153 Wash.2d at 776-77, 778, 108 P.3d 753. Of course the analysis must necessarily take into account a guilty plea if one is entered, where the State would not be put to proof at trial, but it is still inaccurate to say that the analysis only involves the offenses as charged.[3]
¶ 41 With these qualifications, I concur in the result reached by the majority.
WE CONCUR: MARY E. FAIRHURST and DEBRA L. STEPHENS, Justices.
NOTES
[1] The double jeopardy protections under the United States Constitution and the Washington State Constitution provide the same protections. In re Pers. Restraint of Davis, 142 Wash.2d 165, 171, 12 P.3d 603 (2000).
[2] A conflict in the Court of Appeals arose on this waiver issue because Division Two in State v. Amos, 147 Wash.App. 217, 226-27, 195 P.3d 564 (2008), misread our decision in Knight (determining a guilty plea did not automatically waive a double jeopardy challenge) to concern only "unit of prosecution" violations (where the State charges a defendant twice for the same offense e.g., two counts of robbery for the same single robbery) and not "same offense" violations (where the State is not precluded from charging both offensese.g., a felony murder and the underlying robberyeven though double jeopardy would require merger of the claims upon conviction). We have since clarified that a guilty plea does not automatically waive a double jeopardy challenge for a "unit of prosecution" violation or a "same offense" violation. Hughes, 166 Wash.2d at 681 n. 5, 212 P.3d 558. Division Two has already abandoned the Amos holding, see State v. Ramos, noted at 154 Wash.App. 1048, 2010 WL 705258, at *2, and Division One refused to follow it, State v. Martin, 149 Wash.App. 689, 691 n. 1, 205 P.3d 931 (2009).
[3] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[4] The Blockburger test weighs in favor of the attempted first degree robbery and the second degree assault constituting two separate offenses. Under the Blockburger test, offenses are not the same if each offense requires proof of a fact the other does not. Freeman, 153 Wash.2d at 772, 108 P.3d 753 (citing Blockburger, 284 U.S. at 304, 52 S.Ct. 180); In re Orange, 152 Wash.2d at 817, 100 P.3d 291. Here, the offenses as charged are not the same because each has an element the other does not: the attempted first degree robbery requires an intent to take property while the second degree assault here requires use of a deadly weapon. However, this outcome creates a rebuttable presumption that the offenses are not the same. We recognized in Freeman the merger doctrine can rebut this presumption, 153 Wash.2d at 772, 108 P.3d 753, and it does here.
[5] The State cites another Court of Appeals case dealing with the substantial step of attempted first degree robbery, State v. Esparza, 135 Wash. App. 54, 61-64, 143 P.3d 612 (2006). Esparza held that when the State charges a defendant with an attempt crime but does not specify what the substantial step is, for double jeopardy analysis, the court need not assume the assault conduct is the substantial step when other conduct would also satisfy that requirement. Id. at 61-64, 143 P.3d 612. But here the State charged Francis with specific conductinflicting bodily injury on Jacobsento satisfy the statutory element to raise the attempted robbery to the first degree. See RCW 9A.56.200(1)(a)(iii). The second degree assault conduct is inseparable from the attempted first degree robbery as it was charged. The convictions are thus the same for the purposes of double jeopardy and must merge. See Freeman, 153 Wash.2d at 772-73, 108 P.3d 753.
[6] The language of the charge and plea statement could be clearer. Francis, however, does not base his double jeopardy claim on misunderstanding the charge, but rather on whether the facts available can constitute more than one attempted robbery charge under Tvedt. The former argument was not made and is waived. See Ward v. Painters' Local Union No. 300, 45 Wash.2d 533, 541, 276 P.2d 576 (1954) (an argument not raised is waived). Even if it had been raised, misunderstanding the charges does not create a double jeopardy violation but would be a basis to withdraw one's guilty plea (discussed in section III infra).
[7] The State's reliance on Shale is also misguided because there was no majority opinion in Shale; the portion of the lead opinion upon which the State relies has no precedential value. The four-justice lead opinion and four-justice concurrence agreed only in the result. The lead opinion in Shale rejected the double jeopardy challenge, holding the defendant could not make a piecemeal challenge of one count of an indivisible, multiconviction plea agreement. 160 Wash.2d at 492-94, 158 P.3d 588. The lead opinion did not consider whether the court's entry of the convictions violated double jeopardy, as we held in Knight, 162 Wash.2d at 812-13, 174 P.3d 1167. The concurrence rejected the double jeopardy challenge because the defendant waived any double jeopardy violations when he "actively participated in the amendment of charges and in crafting the plea bargain...." Shale, 160 Wash.2d at 502, 158 P.3d 588 (Madsen, J., concurring). When there is no majority opinion, the holding is the narrowest ground upon which a majority agreed. See State v. Patton, 167 Wash.2d 379, 391, 219 P.3d 651 (2009) (citing Davidson v. Hensen, 135 Wash.2d 112, 128, 954 P.2d 1327 (1998)). In Shale, the lead opinion and concurrence agreed only in the result: double jeopardy was not violated in Shale's case.
[1] This is not a reference to a lesser degree of the offense, but rather to the conduct constituting a second offense that must be proved to establish an element or elevated degree of the offense.
[2] This case does not concern another exception to the merger rulewhere the legislature expressly states that offenses will not merge. See RCW 9A.52.050 (burglary antimerger statute).
[3] One obvious example of why the inquiry should not be so limited when a guilty plea is involved is that the defendant might not plead guilty to the offenses as charged.