2015 OCT 12 AM 9:33


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70858-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDMOND MAYNOR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 12, 2015 |
| | ) | |

VERELLEN, A.C.J. — Edmond Maynor appeals his convictions for first degree robbery, second degree assault, and two counts of first degree assault. He contends the robbery and second degree assault convictions violate double jeopardy, that a mistrial was warranted when the prosecutor referred to a prior incident that was not in evidence, and that his attorney was ineffective for failing to challenge his offender score based on same criminal conduct. As charged and proven, the State established robbery based on fear or apprehension resulting from Maynor pointing a gun at a store clerk to obtain jewelry or shooting the gun in the store to retain the jewelry. The State did not make an election. Because either pointing or shooting the gun constituted second degree assault and was necessary to elevate the robbery to first degree robbery, the merger doctrine of double jeopardy precludes entry of both convictions. And because the trial court's curative instruction and Maynor's testimony remedied any potential prejudice from the prosecutor's improper question, a mistrial was unwarranted.

Finally, Maynor fails to show that he was prejudiced by his attorney's failure to raise the same criminal conduct objection to his offender score. Accordingly, we reverse the second degree assault conviction but otherwise affirm.

BACKGROUND

On September 21, 2012, Maynor entered Westlake Center in downtown Seattle and went into the Express Jewelry store. He was wearing a mask, sunglasses, and a hat. Maynor approached the counter and told Tu Huynh, the only employee in the store, that he was looking for a diamond engagement ring priced at $7,000 to $15,000. Huynh responded that the store did not carry such expensive jewelry, but had a $5,000 engagement ring. He then took a ring out of a tray of about 18 other rings and showed it to Maynor.

At this point, Maynor pulled out a gun, pointed it at Huynh, and demanded the whole tray of rings. Maynor told Huynh he would shoot him if he did not give him the tray. When Huynh pulled out the tray, Maynor grabbed it and ran. After running just a few steps, Maynor stopped, turned around, and shot at Huynh. The bullet nearly struck Huynh, tearing a hole in his shirt sleeve. The bullet continued through the wall and into the back of the neighboring store, nearly hitting the store manager.

Maynor fled. Huynh chased him through the mall until they reached the stairs to the Fourth Avenue entrance. Maynor jumped down the stairs and fell, but got up with the gun in his hand, pointed it at Huynh, and fired two more shots. Huynh ducked and avoided being struck by the bullets.

Roberto Sandoval, a bell caption at a nearby hotel, saw Maynor running down the street in a mask. Sandoval chased Maynor and pushed him. Maynor tried to hit

Sandoval, but Sandoval pushed him down. Maynor then pulled out the gun and pointed it at Sandoval. Sandoval threw himself down on Maynor and began fighting for the gun. Three shots were fired, and one bullet struck Sandoval's right hand and arm. Sandoval continued to try to grab the gun, and Maynor hit him three times on the head with it. Sandoval yelled for help, and the gun was thrown out of reach. Several bystanders came to his aid, including a U.S. Marshal, who handcuffed Maynor and waited for Seattle police.

Seattle police arrived and took Maynor into custody. On the ground near the scene, police recovered the handgun, mask, sunglasses, and a small purse. Inside the purse was a notebook containing what appeared to be Maynor's robbery plans.

The State charged Maynor with one count of first degree robbery, alleged to have been committed with a deadly weapon, and three counts of first degree assault (two counts involving Huynh and one count involving Sandoval). Maynor testified and admitted to firing one shot in the store, but claimed that he did not intend to hurt Huynh and was only trying to scare him into letting go of the jewelry. He also admitted to firing additional shots at Huynh while fleeing, but claimed he was only trying to keep Huynh from following him. Finally, Maynor admitted that his gun discharged three times during his struggle with Sandoval, but claimed he did not purposely shoot the gun.

The jury found Maynor guilty of first degree robbery, two counts of first degree assault (one count involving Huynh and one count involving Sandoval), and one count of the lesser included offense of second degree assault (on the other assault count involving Huynh). By special verdict, the jury also found that Maynor was armed with a firearm on each count. The court sentenced Maynor to 474 months of confinement.

3

## DISCUSSION

### *Double Jeopardy*

Maynor first contends that because the robbery and second degree assault convictions were for the same offense, entry of both convictions violates double jeopardy. Under the existing merger case law, we agree.

A court that enters multiple convictions for the same offense violates both the federal and state constitutional guaranty against double jeopardy.[1] Whether two offenses are considered separate offenses hinges upon legislative intent.[2] To determine legislative intent, we first consider any express or implicit representations of legislative intent.[3] In the case of first degree robbery and second degree assault, our courts have recognized that this inquiry "is a dead end; the relevant statutes provide no express or implicit representations."[4]

We next consider the Blockburger test, the merger doctrine, and whether there was an independent purpose or effect for each offense.[5] This inquiry is conducted as to first degree robbery and second degree assault on a case by case basis, taking a "hard look at each case."[6] We do not consider the elements of the crimes on a hypothetical or abstract basis but view the offenses as actually charged and proved.[7]

---

[1] State v. Freeman, 153 Wn.2d 765, 770-71, 108 P.3d 753 (2005).

[2] In re Pers. Restraint of Francis, 170 Wn.2d 517, 523, 242 P.3d 866 (2010).

[3] Id.

[4] Id.

[5] Freeman, 153 Wn.2d at 772-73 (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

[6] Id. at 774.

[7] Francis, 170 Wn.2d at 523.

Maynor does not argue that the offenses are the same under the Blockburger test. We need not perform this analysis.[8]

Instead, Maynor argues that the offenses as charged and proved are the same under the merger doctrine and therefore amount to double jeopardy. "Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime."[9] Thus, an assault committed in furtherance of a robbery merges with the robbery.[10]

Here, the to convict instruction set forth the required proof as charged in the first degree robbery count:

> (3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person or to that person's property . . . ;
>
> (4) That force or fear was used by the defendant to obtain or retain possession of the property; [and]
>
> (5) That in the commission of these acts or in immediate flight therefrom, *the defendant was armed with a deadly weapon*.[11]

---

[8] See id. ("These considerations [Blockburger test, merger doctrine, determination of independent purpose or effect of each offense] inform but do not compel our outcome."); Freeman, 153 Wn.2d at 777 (recognizing that "'Blockburger is not dispositive of the question whether two offenses are the same'" (quoting In re Pers. Restraint of Percer, 150 Wn.2d 41, 50-51, 75 P.3d 488 (2003))).

[9] Freeman, 153 Wn.2d at 772-73.

[10] Id. at 778 (merger does not apply to first degree assault because first degree assault carries a greater sentence than first degree robbery)

[11] Clerk's Papers (CP) at 92 (emphasis added).

The to convict instruction on the lesser included offense of second degree assault required proof that "the defendant assaulted Tu Huynh with a deadly weapon."[12] The instructions defined "assault" as:

An assault is an intentional shooting of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person.

An assault is also an act, with unlawful force, done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.

An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.[13]

The State contends that, as charged, the robbery and assault did not merge because proof of the second degree assault was not required to establish the robbery. The State asserts the robbery charge was based on Maynor's act of pointing the gun at Huynh and threatening to shoot if he did not give up the jewelry and the second degree assault charge was based on the shot Maynor fired at Huynh in the store after he obtained the jewelry and began to flee. Thus, the State contends the charged assault (the shooting) was not required to establish the robbery (achieved by the gun pointing).

But the instructions did not narrow the charges in the manner suggested by the State. To convict Maynor of first degree robbery, the jury had to find that he "use[d] *or* threatened use of immediate force" and was armed with a deadly weapon "in the

---

[12] CP at 104.
[13] CP at 96.

6

commission of these acts *or* in immediate flight therefrom."[14] And to convict of second degree assault, the jury had to find that he intentionally assaulted Huynh with a deadly weapon. As proved, there was no threatened use of force until Maynor displayed the gun and pointed it at Huynh. There was no use of force until he shot the gun just before he fled from the store. To find Maynor guilty of robbery as charged and proven, the jury had to find that either Maynor threatened use of force to obtain the property while armed with or displaying a deadly weapon by pointing the gun at Huynh and demanding the tray of rings or that he used force to retain the property while armed with or displaying a deadly weapon by shooting at him in the store after he took the jewelry. Both of these acts amount to a second degree assault. Under the merger doctrine, because the second degree assault elevated the crime to first degree robbery, the convictions were for the same offense.

The State argues it clearly elected the shooting as the act constituting the assault charge. To withstand a double jeopardy challenge, it must be manifestly apparent that the jury based each conviction on a separate act.[15] "Considering the evidence, arguments, and instructions, if it is not clear that it was 'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act, there is a double jeopardy

---

[14] CP at 92 (emphasis added).

[15] State v. Mutch, 171 Wn.2d 646, 664, 254 P.3d 803 (2011); see also State v. Carson, No. 90308-5, 2015 WL 5455671, at *9 (Wash. Sept. 17, 2015) ("[A]n election can be made by the prosecuting attorney in a verbal statement to the jury as long as the prosecution 'clearly identifie[s] the act upon which' the charge in question is based." (alteration in original) (quoting State v. Thompson, 169 Wn. App. 436, 474-75, 290 P.3d 996 (2012))).

violation."[16] Here, the prosecutor's closing argument regarding first degree robbery referred to Maynor's testimony admitting that he was armed with a deadly weapon when he entered the store "threatening to use his weapon."[17] But in the very next breath, the prosecutor argued, "And he fired a round in the store."[18] The prosecutor's reference to both being armed with and shooting the gun in the context of first degree robbery did not make it manifestly apparent to the jury that the State was relying only on being armed with a firearm and not upon shooting the firearm as the basis for first degree robbery.

Additionally, "we cannot consider the closing statement in isolation."[19] The evidence and the instructions allowed the jury to find that either assault established the robbery. The instructions did not require that the assault be based on an act separate and distinct from that which formed the basis for the robbery.[20] Accordingly, "[t]his creates an ambiguity in the jury's verdict, which, under the rule of lenity, must be resolved in the defendant's favor."[21]

---

[16] Mutch, 171 Wn.2d at 664 (emphasis omitted) (alteration in original) (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)).

[17] Report of Proceedings (RP) (June 18, 2013) at 279.

[18] Id.

[19] State v. Kier, 164 Wn.2d 798, 813, 194 P.3d 212 (2008).

[20] The instructions stated only that the jury had to find that the assault charged in count II occurred "on an occasion separate and distinct from [c]ount IV," the other first degree assault charge involving Huynh. CP at 98, 104.

[21] Kier, 164 Wn.2d at 811 (despite State's election in closing argument of different victims for the two offenses, evidence and instructions allowed jury to convict if it found that victim was the same for both counts).

State v. Kier controls the merger analysis.[22] In a carjacking, Kier pointed a gun at the driver of a car, who was able to run away. Kier then pointed the gun at the passenger in the car and directed the passenger to get out of the car. Kier and others drove away with the car. The State charged Kier with first degree robbery, identifying the driver and the passenger as victims of the carjacking. The State also charged Kier with second degree assault, specifying the passenger as the victim. In closing argument, the State referred to the driver as the victim of the robbery and the passenger as the victim of the assault. As the court explained:

> When the definitions of first degree robbery and second degree assault are set *side by side*, it is clear that both charges required the State to prove that Kier's conduct created a reasonable apprehension or fear of harm. Because Kier was also charged with being armed with or displaying a deadly weapon, this was the means of creating that apprehension or fear. The merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree because being armed with or displaying a firearm or deadly weapon to take property through force or fear is essential to the elevation.[23]

This analysis applies equally here. When the definitions of first degree robbery and second degree assault are considered side by side, both charges required the State to prove that Maynor's conduct created reasonable apprehension or fear of harm. Although charged with being armed with a deadly weapon, as proved, Maynor both displayed and discharged the deadly weapon as the means of creating apprehension or fear. Stated another way, the apprehension or fear of harm was proved both when Maynor displayed and discharged the gun in the store. Being armed with or displaying

---

[22] 164 Wn.2d 798, 194 P.3d 212 (2008).

[23] Id. at 806 (emphasis added).

the firearm to take or retain property through force or fear was essential to the elevation of robbery to first degree. Merger applies.

The State's reliance on State v. Esparza is misplaced.[24] There, the court held that convictions for attempted first degree robbery and second degree assault did not violate double jeopardy because proof of the assault was not necessary to establish the substantial step taken towards the attempted robbery.[25] Esparza had entered a store, pointed a gun at customers and employees and announced that it was a robbery. He also approached an employee and pointed a gun at him, but was shot by that employee and never completed the robbery. Esparza was found guilty of attempted first degree robbery and second degree assault.

On appeal, Esparza claimed that the assault was the substantial step necessary to establish the attempted robbery and therefore merged with the attempted robbery conviction. The court disagreed, noting that there was other conduct proven at trial that could have established that Esparza took a substantial step toward commission of the robbery and that as charged, there were no specific allegations as to what constituted the substantial step.[26] The court noted that Esparza's entry into the store wielding a gun and announcing the robbery would have been sufficient to establish a substantial step toward the commission of first degree robbery, without proof of the assault.[27] The

---

[24] 135 Wn. App. 54, 143 P.3d 612 (2006).

[25] Id. at 64.

[26] Id. at 63.

[27] Id. at 64.

State was not required to prove the second degree assault to establish the attempted first degree robbery.[28]

The State asserts that Esparza is indistinguishable from this case. But Esparza involved an *attempted* first degree robbery, which required only proof of a substantial step toward carrying out an intent to commit a robbery, with no specific conduct charged as the substantial step. Here, the charge was a completed first degree robbery, which required proof of the use or threatened use of force to obtain or retain property while armed with a deadly weapon. Unlike Esparza, there was no other unspecified conduct that could have supported the first degree robbery charge. Rather, the use or threatened use of force while armed with a deadly weapon was proved by Maynor's pointing the gun to obtain the jewelry or the shooting to retain the stolen jewelry. The use of the weapon was the means of force or threat of force used to accomplish the robbery and also amounted to an assault. Proof of either assault was therefore necessary to establish the completed robbery.

In Kier, the court rejected a similar reliance on Esparza, stating:

> Importantly, the elevated charge at issue in Esparza was *attempted* first degree robbery. Proof of an attempted robbery requires only proof of intent to commit robbery and a substantial step toward carrying out that intent. The Court of Appeals recognized that any number of actions proved at Esparza's trial constituted a substantial step toward the attempted robbery and, thus, the assault was not necessary to elevate the charge to first degree.[29]

For similar reasons, the State's reliance on In re Personal Restraint of Francis is also misplaced. A footnote in Francis distinguished Esparza on this same ground:

---

[28] Id.

[29] Kier, 164 Wn.2d at 807 (citation omitted).

11

Esparza held that when the State charges a defendant with an attempt crime *but does not specify what the substantial step is,* for double jeopardy analysis, the court need not assume the assault conduct is the substantial step when other conduct would also satisfy that requirement. But here the State charged Francis with *specific* conduct—inflicting bodily injury on Jacobsen—to satisfy the statutory element to raise the attempted robbery to the first degree. The second degree assault conduct is inseparable from the attempted first degree robbery *as it was charged.*[30]The State contends Francis supports a conclusion that there was no merger here because the first degree robbery charge only required that Maynor be armed with a deadly weapon, not that he inflicted bodily injury, as in Francis. But again, the State's argument ignores the fact that Francis addressed merger in the context of *attempted* first degree robbery, proof of which differs from that of a completed robbery and involves a different merger analysis. As explained in Kier, in the context of a completed first degree robbery, the merger doctrine applies whether the assault was with a deadly weapon or by the infliction of substantial bodily harm:

Kier was convicted of completed first degree robbery, which required more than a substantial step. That the assault here involved assault with a deadly weapon, rather than by the infliction of substantial bodily harm, does not defeat application of the merger doctrine. The fact remains that the completed assault was necessary to elevate the completed robbery to first degree.[31]

The result is the same here.

Finally, the State argues that even if merger otherwise applies, we should conclude that the shot fired at Huynh in the store had a separate and distinct purpose or effect from the robbery. But the evidence at trial did not identify any purpose or effect of that assault other than to effectuate the robbery. Additionally, we have adopted the "transactional" view of robbery, that "[t]he taking is ongoing until the assailant has effected an escape [and that] [t]he definition of 'robbery' therefore includes 'violence

---

[30] Francis, 170 Wn.2d at 526 n.5 (citations omitted).

[31] Kier, 164 Wn.2d at 807.

during flight immediately following the taking.'"[32] Similarly, shooting a gun during flight from the store does not, in itself, establish a separate or distinct purpose from the robbery.

From a broad policy perspective, it is troublesome that an individual who commits first degree robbery by both pointing a gun to force an individual to hand over property and subsequently shooting the gun to retain that same property faces no greater penalty than an individual who merely points the gun. But a valid election could have been accomplished by an instruction requiring the jury to base the first degree robbery only on conduct other than shooting the gun in the jewelry store. No such instruction was requested or given here.

Under existing case law, notably the merger analysis in Kier, we conclude that Maynor's convictions for first degree robbery and second degree assault violate double jeopardy. Accordingly, we remand to vacate the second degree assault conviction.

### Prosecutorial Misconduct

Maynor next argues he was denied a fair trial when during cross-examination, the prosecutor falsely accused him of planning a similar attack in the past. He contends the trial court abused its discretion by failing to grant a mistrial because a curative instruction could not have remedied the prejudicial effect of the prosecutor's improper question. We disagree.

---

[32] State v. Truong, 168 Wn. App. 529, 535-36, 277 P.3d 74 (2012) (citation omitted).

We review a denial of a motion for a mistrial based on improper statements made at trial for abuse of discretion.[33] In ruling on a motion for mistrial, "[c]ourts look to three factors to determine whether a trial irregularity warrants a new trial: '(1) the seriousness of the irregularity; (2) whether the statement was cumulative of evidence properly admitted; and (3) whether the irregularity could be cured by an instruction.'"[34]

Maynor testified that he was having an emotional breakdown and was suicidal at the time of the offense and that when he set out to commit the robbery, he "didn't want to see the end of the day."[35] During cross-examination, the prosecutor questioned Maynor about his planning and preparation and asked, "This is not the first time that you had contemplated hurting others in [an] effort to be shot by police, was it?"[36] Maynor responded, "What do you mean?"[37] Defense counsel objected and asked for a sidebar.

The court excused the jury and asked the prosecutor if he had evidence of a prior incident. The prosecutor referred to Maynor's notebook found in a purse near the crime scene, which had already been admitted as evidence. The prosecutor asserted that the notebook contained information about a plan, either another robbery with a sniper rifle or a sniper attack, and Maynor's efforts to buy a sniper rifle, use a suppressor, and use different disguises. Maynor contended this was an improper attempt to introduce ER 404(b) evidence excluded by the trial court's ruling in limine and was impermissible

---

[33] State v. Perez-Valdez, 172 Wn.2d 808, 814, 265 P.3d 853 (2011).

[34] Id. at 818 (quoting State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992)).

[35] RP (June 17, 2013) at 177.

[36] Id. at 183.

[37] Id.

evidence of propensity. The prosecutor argued that these entries were relevant to show Maynor's intent to hurt other people in the past:

> Essentially, what the evidence in this case will be is that he would hurt as many people along the way, and hoped to be shot by police. That's his testimony. There is evidence that bears that out. He made preparations for that along the way[,] from the time he purchased that gun in April of 2012 until he tried to complete his plan, albeit not successfully, on September 21, 2012.[38]

The court ruled that the evidence was inadmissible and that "[i]ts likely prejudicial effect outweighs the probative value, that it's being offered to show that he is the sort of person who wants to go out and kill other people."[39]

The court then ruled on the mistrial motion. The court noted that the notebook was "admitted without limitation."[40] Maynor pointed out that there was nothing in the notebook about plans to commit some other crime other than this robbery and that, while it referred to other robberies he might have researched in preparing for this one, there was nothing about him planning to hurt other people. The prosecutor responded by recasting the question based not on a prior act but on Maynor's planning of this robbery, evidence of which was contained in the notebook.

The trial court agreed that the evidence of planning in the notebook was not about a prior act and that the form of the prosecutor's question suggested there was some evidence in the notebook that Maynor intended to harm people. But the court also noted that this could be corrected through cross-examination and the jury's own review of the notebook. The court denied the motion for mistrial.

---

[38] Id. at 185.

[39] Id. at 187.

[40] Id. at 189.

Maynor then pointed out that the jury did not know that the prosecutor's question referred to statements in the notebook and that they still might think there was another prior incident. The court offered to require the prosecutor to clarify on the record with Maynor that he was being questioned about references in the notebook. Maynor did not accept this suggestion but proposed a curative instruction, which the court adopted. When the jury returned, the court instructed them, "Jury, the last question from the prosecutor is stricken. You are instructed to disregard that question and any inferences from that question."[41] The prosecutor then resumed cross-examination, questioning Maynor about the contents of the notebook.

Maynor fails to show that the trial court abused its discretion by denying his motion for a mistrial. While the prosecutor's question alluding to facts not contained in the notebook was troubling, the notebook was admitted in its entirety. The jurors had the opportunity to view it themselves and determine whether there were prior incidents mentioned. Additionally, Maynor was able to clarify any mischaracterization of the contents of the notebook or his efforts to plan the charged crime during cross-examination. Indeed, the prosecutor specifically questioned him about entries that potentially referred to other incidents:

> Q. You contemplated here robbing a bank, you have notation of a bank, and you contemplated robbing an armor[ed] truck, am I correct?
>
> A. That is stuff I looked at online. I wrote down notes so that I could, you know, look at videos and stuff like that online.[42]

---

[41] Id. at 202.

[42] Id. at 206.

The prosecutor also questioned him about entries related to the charged crime:

Q.  And this notebook reflects many of the things that you were contemplating and thinking, leading up to the events of September 21, 2012, correct?

A.  I was thinking about some of the journal notes, but not all of them.[43]

Q.  You contemplated the type of ammunition, in addition to figuring out the shotgun, a rifle slug will go through glass, you contemplated some other ammunition that might be of use to you in the events of September 21, 2012, correct?  For example, here you have notations about armor piercing rounds, shadow rounds, correct?

A.  Yes.

. . . .

Q.  . . . This was all leading up to the September 21, 2012 robbery that you did commit, that you did choose to commit, correct?

A.  Yes.[44]

Finally, the trial court gave the curative instruction proposed by Maynor.  While Maynor persistently argues that "the bell cannot be unrung," he fails to show on this record that the prosecutor's question was so prejudicial that a mistrial was required. Maynor admitted to the robbery and the shootings.  The facts before the jury were largely uncontroverted and based on eyewitness testimony of several independent witnesses.  Maynor fails to show that the trial court abused its discretion by denying his motion for a mistrial.

---

[43] Id. at 203.

[44] Id. at 206.

17

*Ineffective Assistance of Counsel*

Finally, Maynor claims he was denied effective assistance of counsel by his attorney's failure to argue for an offender score calculation based on same criminal conduct. We disagree.

By affirmatively agreeing to his offender score, Maynor waived a challenge to his offender score based on same criminal conduct. Instead, Maynor contends his attorney's failure to raise this issue amounts to ineffective assistance of counsel. He contends that the robbery conviction and the assault convictions involving Huynh encompassed the same criminal conduct because they were committed at the same time, in the same place, and with the same intent, involving the same victim. Because we reverse his second degree assault conviction on double jeopardy grounds, we address his argument only in terms of the first degree robbery and the first degree assault charges involving Huynh.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that trial counsel's performance was deficient and that prejudice resulted from the deficiency.[45] Maynor must show that it was objectively unreasonable for his attorney to not make the same criminal conduct argument and that the argument would have been successful.

To prevail on a same criminal conduct claim, the defendant must prove that the convictions required the same criminal intent, were committed at the same time and

---

[45] State v. Thomas, 109 Wn.2d 222, 225, 743 P.2d 816 (1987) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed .2d 674 (1984)).

place, and involved the same victim.[46] The defendant bears the burden of proving that his convictions encompass the same criminal conduct.[47] We construe these requirements narrowly "to disallow most claims that multiple offenses constitute the same criminal act."[48]

Maynor contends that the crimes occurred in the same place and at the same time, citing State v. Porter[49] and State v. Davis.[50] The State argues they occurred in different places and with different intent, citing State v. Stockmyer[51] and State v. Dunaway.[52] As these cases highlight, there is a range of fact patterns present in same criminal conduct case law. Our courts have recognized that the trial court has considerable discretion in making these determinations as they turn on the specific facts of each case. "The trial judge [is] in the best position to evaluate the sequence of

---

[46] RCW 9.94A.589(1)(a).

[47] State v. Graciano, 176 Wn.2d 531, 539, 295 P.3d 219 (2013).

[48] State v. Porter, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

[49] 133 Wn.2d 177, 183, 942 P.2d 974 (1997) (two drug sales occurred at the same time because they "were part of continuous, uninterrupted sequence of conduct over a very short period of time").

[50] 174 Wn. App. 623, 644, 300 P.3d 465 (2013) ("Where, as here, the different physical locations are adjacent and within a short distance of each other, we cannot say that the trial court abused its discretion by finding them to be the same place.").

[51] 136 Wn. App. 212, 219, 148 P.3d 1077 (2006) (unlawful possession of multiple guns in three different rooms in the same house did not constitute same criminal conduct; "multiple guns in different rooms in felons' homes increase the peril to both law enforcement and the general public in that they provide felons with easier and more ready access to guns in the home, thus increasing the possibility of harm to others").

[52] 109 Wn.2d 207, 217, 743 P.2d 1237, 749 P.2d 160 (1987) (where defendant robbed a restaurant employee and then attempted to kill the employee before fleeing, objective intent of robbery and attempted murder was substantially different; "[w]hile the attempted murders may have been committed in an effort to escape the consequences of the robberies, they in no way furthered the ultimate goal of the robberies").

events and to determine whether these locations were separate places for the purposes of the same criminal conduct analysis."[53] Accordingly, it is difficult to conclude "as a matter of law that the locations involved were the same place for same criminal conduct purposes."[54]

We conclude that Maynor does not establish that his attorney's conduct fell below an objective standard of reasonableness and resulted in prejudice. While the first degree robbery and first degree assault of Huynh did occur in the course of his actions in the store and subsequent flight from the store, in view of the discretion granted the trial court, there is a reasonable probability that the court would have rejected a same criminal conduct argument. Maynor's claim of ineffective assistance of counsel fails.

## CONCLUSION

We affirm the convictions for first degree robbery and first degree assault. We reverse the conviction for second degree assault and remand for resentencing.

WE CONCUR:

Trickey, J

Becker, J.

---

[53] Davis, 174 Wn. App. at 643-44.

[54] Id. at 643.