S<small>WEENEY</small>, C.J., and M<small>UNSON</small>, J., concur.

Review denied at 131 Wn.2d 1016 (1997).

[No. 32498-5-I.   Division One.   October 14, 1996.]

T<small>HE</small> S<small>TATE OF</small> W<small>ASHINGTON</small>, *Respondent,* v.
J<small>OHNATHON</small> F<small>ROHS</small>, *Appellant.*

804

*Eric Nielsen* and *Nielsen & Acosta,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *James M. Whisman, Deputy,* for respondent.

KENNEDY, J. — Johnathon Frohs appeals his convictions of unlawful imprisonment and fourth degree assault, contending that the two crimes merged and that his convictions for both violated the prohibition against double jeopardy. Although we reject the State's argument that the merger doctrine no longer exists, we find no violation of the doctrine and, accordingly, no violation of Frohs' right to be free from double jeopardy. We also find no

instructional error. Accordingly, we affirm Frohs' convictions of both crimes.

## I

On February 22, 1992, Johnathon Frohs and Stephanie Smith engaged in an argument in the upstairs bedroom of the home they were sharing with another couple. During the argument, Frohs pushed Smith into a dresser, onto the floor, and onto the bed, and squeezed her mouth until it bled. When Smith expressed her desire to leave, Frohs became angry, told her that he would not let her leave, and threatened to shoot her in the head if she left. Smith testified that she took Frohs' threat seriously because he was very angry and had a gun with him. When she nevertheless attempted to leave, Frohs held her down on the bed and then ordered her to sit in a chair while he watched her. Smith took advantage of a distraction, caused when one of the other residents of the house called upstairs to ask what was wrong, to flee to a neighbor's house and call the police.

Frohs was charged with one count of unlawful imprisonment, in violation of RCW 9A.40.040, and one count of fourth degree assault, in violation of RCW 9A.36.041. At the ensuing jury trial, Frohs was found guilty as charged and was sentenced within the standard range.

Frohs now appeals.

## II

Frohs contends that Smith's assault was contemporaneous in time and place with her unlawful imprisonment, and was merely incidental to her unlawful imprisonment, and resulted in no greater injury to her than the unlawful imprisonment, and that the fourth degree assault therefore merged into the offense of unlawful imprisonment. The State responds that "[a]fter the recent Washington Supreme Court decision in *State v. Calle*, [125 Wn.2d 769,

776, 888 P.2d 155 (1995), the] 'merger doctrine' no longer exists." Resp't Br. at 1-2. In support of this proposition, the State points to the following language in *Calle*: "There are no non-double jeopardy reasons for reviewing multiple punishments—rather, the foundation for such review is the constitutional prohibition against double jeopardy." *Calle*, 125 Wn.2d at 775. At oral argument for this appeal, when asked to clarify the State's contention that the merger doctrine no longer exists, the prosecutor opined that the merger doctrine is not dead, but rather that it has been transformed into the third prong of the *Calle* analysis, and that there has been a change in the applicable presumption when determining legislative intent that did not exist when our Supreme Court adopted the merger doctrine.

▉ The merger doctrine is a rule of statutory construction which our Supreme Court has ruled only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime the State must prove not only that the defendant committed that crime but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes. *State v. Vladovic*, 99 Wn.2d 413, 421, 662 P.2d 853 (1983). Thus, in *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979) wherein the defendant had been convicted of first degree rape as well as first degree kidnapping and first degree assault, our Supreme Court struck the convictions for kidnapping and assault because in order to be guilty of first degree rape, the defendant must have accomplished sexual intercourse by forcible compulsion while using or threatening to use a deadly weapon or by kidnapping the victim; thus the assault and kidnapping convictions merged with the first degree rape conviction.

The court examined the legislative history of the rape statutes and determined that the Legislature, in repealing the previous rape statute, which did not differentiate between degrees of rape, and substituting statutes defining first, second and third degree rape and imposing stiffer

penalties for the higher degrees of the crime, evidenced its intent that conduct involved in the perpetration of a particular degree of rape, and not having an independent purpose or effect, should be punished as an incident of that degree of rape and not additionally as a separate crime. *Johnson*, 92 Wn.2d at 676-78. The court concluded that, whenever it is necessary in order to prove a particular degree of crime (e.g., first degree rape), the State also must prove that the crime (e.g., rape) is accompanied by conduct that is defined as a crime elsewhere in the criminal code (e.g., assault or kidnapping). An additional conviction for the "included" crime cannot be allowed to stand unless it involves some injury to the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element. *Johnson*, 92 Wn.2d at 680.

Applying this "separate and distinct injury" exception to the merger doctrine in *Vladovic*, the Supreme Court concluded that although it was the first degree (armed) robbery of one victim that elevated the kidnappings of four other victims to that of the first degree, the kidnapping and robbery convictions did not merge in that the kidnappings and robbery involved different victims and clearly created separate and distinct injuries. *Vladovic*, 99 Wn.2d at 421-22.

Because the State argues that the merger doctrine has been so substantially altered by *Calle* that the doctrine as pronounced in *Johnson* and *Vladovic* "no longer exists," we now turn to an analysis of the portions of *Calle* that are relevant to this contention. Relying on *State v. Birgen*, 33 Wn. App. 1, 3, 651 P.2d 240 (1982), *review denied*, 98 Wn.2d 1013 (1983) the defendant in *Calle* argued that non-double jeopardy reasons existed upon which to base review of multiple convictions. The *Calle* court rejected the *Birgen* court's assertion that a non-double jeopardy basis existed for reviewing multiple convictions: "There are no non-double jeopardy reasons for reviewing multiple punishments—rather, the foundation for such review is

the constitutional prohibition against double jeopardy." *Calle*, 125 Wn.2d at 775. The court nevertheless concluded that the *Birgen* court's ruling that convictions for statutory rape and third degree rape arising from a single act of sexual intercourse were prohibited to be sustainable, *Calle*, at 775, even though the offenses were not the same under the "same evidence" and *Blockburger*[1] tests. *Calle*, at 779-80.

As had the *Birgen* court, the *Calle* court recognized that the *Blockburger* and "same evidence" tests are significant indicators of legislative intent, but that they are not necessarily dispositive of whether two offenses are the same. *Calle*, at 780; *see also Birgen*, 33 Wn. App. at 7. Indeed, legislative history and the purposes of the statutes governing the offenses in question may persuade a reviewing court that the legislative body did not intend multiple punishments, even though the offenses have differing legal elements. *Calle*, at 780; *see also State v. Potter*, 31 Wn. App. 883, 887-88, 645 P.2d 60 (1982) (although offenses of reckless driving and reckless endangerment have different legal elements, in fact, proof of reckless endangerment through use of an automobile will always establish reckless driving; thus the court declined to adhere to the result of the *Blockburger* test).

The *Calle* court also pointed to its own opinion in *State v. Johnson*, 92 Wn.2d 671, as yet another example that the *Blockburger* and "same evidence" tests, which are rules of statutory construction and which serve as a means of discerning legislative purpose, "should not be controlling where there is a clear indication of contrary legislative intent." *Calle*, 125 Wn.2d at 778-79 (citing *Albernaz v. United States*, 450 U.S. 333, 340, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981). In *Johnson*, as we have already discussed, our Supreme Court applied the merger doctrine to ascertain legislative intent, even though the rape, kidnapping and

---

[1]*Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

assault convictions there involved clearly had different legal elements. *Calle*, 125 Wn.2d at 779.

We find nothing in our analysis of *Calle*, thus far, that persuades us that the merger doctrine no longer exists. Indeed, the doctrine would appear to still be thriving, as one of several means of determining legislative intent when the *Blockburger* and "same evidence tests" leave the reviewing court still dissatisfied as to whether the legislative authority intended multiple punishments in any given case. The question remains whether the *Calle* court substantially modified the merger doctrine when it stated that the *Blockburger* and "same evidence" tests, although not dispositive, are significant indicators of legislative intent and raise a presumption that where the legislative authority has set forth statutory offenses for which punishments are separately provided, cumulative punishments are presumptively authorized absent a clear indication of contrary legislative intent. *Calle*, 125 Wn.2d at 778 (citing *Albernaz*, 450 U.S. at 340), and at 780 ("As stated earlier, however, the presumption accorded to statutes by these rules should be overcome only by clear evidence of contrary intent."). It is this presumption that the State contends is new with the *Calle* opinion, i.e., did not exist at the time of *Johnson* and *Vladovic*. We disagree that the presumption originated in *Calle*.

In *Vladovic*, the Supreme Court clearly stated that "the merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated [that it did not intend to impose multiple punishments for a single act that violates several statutory provisions]." *Vladovic*, 99 Wn.2d at 420-21 (italics ours); *see also State v. Eaton*, 82 Wn. App. 723, 729-30, 919 P.2d 116 (1996) (quoting *State v. Slemmer*, 48 Wn. App. 48, 56, 738 P.2d 281 (1987)). In *Albernaz*, written after *Johnson* but before *Vladovic*, and cited extensively in *Vladovic*, 99 Wn.2d at 422, the United States Supreme Court said, in pertinent part:

The *Blockburger* test is a "rule of statutory construction,"

and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.

*Albernaz*, 450 U.S. at 340. This is the same citation to *Albernaz* found in *Calle*, 125 Wn.2d at 778. *Calle* did not change the nature of the applicable presumption but simply restated it.

We reject the State's contention that the merger doctrine as defined in *Johnson* and *Vladovic* no longer exists. *Accord Eaton*, 82 Wn. App. at 727-29 (rejecting State's contention that the Supreme Court abrogated the merger doctrine in *Calle*; declining to assume that the court intended to abrogate the doctrine without mentioning it at all). We conclude that the doctrine is alive, well and unaltered by *Calle*, and that it may well serve, in an appropriate case, as the dispositive rule of statutory construction, even when the criminal statutes in question pass the *Blockburger* and same evidence tests.

This conclusion does not conflict with the Supreme Court's assertion in *Calle* that there are no non-double jeopardy reasons for a reviewing court to examine multiple punishments. Indeed, because the Fifth Amendment protects not only against a second trial for the same offense but also against multiple punishments for the same offense, "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980) (citations omitted). Where the legislative branch has acted within its own constitutional powers in prescribing cumulative punishments, the courts are likewise authorized, indeed required, to apply the rule of law so prescribed. But where the legislative branch has not authorized cumulative punishments and a court nevertheless imposes them, such court has violated not only the Fifth Amendment guaranty against double jeopardy but the constitutional principle of separation of powers as well. *Whalen*, 445 U.S. at 689.

The merger doctrine is simply another means, in addition to the *Blockburger* and "same evidence" tests, by which a court may determine whether the legislative branch has authorized multiple punishments. Thus, the merger doctrine is simply another means by which a court may determine whether the imposition of multiple punishments violates the Fifth Amendment guaranty against double jeopardy; i.e., whether the legislative branch, acting within its own constitutional limitations, has authorized cumulative punishments.

Where there is no contention that the legislative branch has exceeded its own constitutional limitations in authorizing cumulative punishments, the role of the reviewing court is limited to assuring that the sentencing court did not exceed the authority granted by the Legislature in imposing cumulative punishments. *Calle*, 125 Wn.2d at 776 (citing *Albernaz*, 450 U.S. at 344 (citing, in turn, *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977))).[2]

## III

We turn now to the specific contentions raised by Mr. Frohs in the instant appeal, applying the *Calle* analysis to

---

[2]It has been said repeatedly that, unlike double jeopardy, the merger doctrine is not of constitutional magnitude. *E.g., Eaton*, 82 Wn. App. at 730; *State v. Slemmer*, 48 Wn. App. at 56- 57. As established by *Whalen*, 455 U.S. at 689-70, however, because the double jeopardy clause prohibits cumulative punishments not legislatively authorized, the issue of legislative intent to punish separately has constitutional ramifications. The cases stating that the merger doctrine is not of constitutional magnitude rely upon case law developed during the era that the federal and Washington courts were holding that double jeopardy was not implicated by multiple convictions so long as the sentences ran concurrently. After *Ball v. United States*, 470 U.S. 856, 864-65, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985) and *Calle*, 125 Wn.2d at 774-75, this is no longer the law. Probably this is what the Supreme Court had in mind, in *Calle*, when it said that there are no non-double jeopardy reasons for reviewing multiple punishments. Before *Ball* and *Calle*, the merger doctrine could be violated without running afoul of the double jeopardy clause, so long as the sentences ran concurrently. That is no longer the case. It would appear, then, that the merger doctrine belongs squarely within the third prong of the *Calle* double jeopardy analysis, in every case in which a defendant claims that the merger doctrine has been violated.

his double jeopardy claims, and treating the merger issue with the third prong of the *Calle* analysis, where we believe that it properly belongs.

The guaranty against double jeopardy protects against multiple punishments for the same offense. *State v. Calle*, 125 Wn.2d at 776 (citing *Whalen v. United States*, 445 U.S. at 688. The Legislature possesses the power to define criminal conduct and to assign punishment; therefore, double jeopardy analysis cannot be resolved without determining what punishments the legislative branch has authorized and assuring that the trial court did not exceed its authority by imposing multiple punishments for the same offense. *Calle*, 125 Wn.2d at 776 (citing *Whalen*, 445 U.S. at 689; *Albernaz* 450 U.S. at 344).

In *Calle*, the Washington Supreme Court considered whether convictions for first degree incest and second degree rape arising from a single act of sexual intercourse violated the Fifth Amendment's protection against double jeopardy. *Calle*, 125 Wn.2d at 771. The *Calle* court first looked to the incest and rape statutes to determine whether multiple convictions for a single act of sexual intercourse were expressly authorized. *Calle*, 125 Wn.2d at 776. Finding that they were not, the court then applied the "same evidence" test to determine whether each offense included elements not included in the other. *Calle*, at 777 (citing *In re Fletcher*, 113 Wn.2d 42, 49, 776 P.2d 114 (1989) (citing, in turn, *Vladovic*, 99 Wn.2d at 423)). Finally, after determining that the two crimes were not identical in law and in fact, the court looked to the history and intent of the statutes to determine whether there was any clear evidence rebutting the presumption in favor of separate convictions where the legislature has separately set forth the elements of the offenses and the punishments therefor. *Calle*, at 778-80. Finding none, the court concluded that the double jeopardy clause did not prevent convictions and penalties for both crimes arising out of a single act of intercourse.

Applying the *Calle* analysis here, we first look to the

unlawful imprisonment and fourth degree assault statutes, RCW 9A.40.040 and 9A.36.041, to determine whether they expressly authorize convictions for both offenses arising out of a single act. Neither statute expressly authorizes cumulative punishment for acts committed in the commission of either crime. We therefore turn to the question of whether the two crimes violate the "same evidence" rule. *See Calle*, 125 Wn.2d at 776-77.

Under the "same evidence" rule of construction, the defendant's double jeopardy rights are violated if he is convicted of offenses that are identical in both law and fact. *Calle*, 125 Wn.2d at 777 (citing *State v. Johnson*, 96 Wn.2d 926, 933, 639 P.2d 1332 (1982), *overruled on other grounds by Calle*, 125 Wn.2d at 774-75; *State v. Roybal*, 82 Wn.2d 577, 582, 512 P.2d 718 (1973) (quoting *State v. Reiff*, 14 Wash. 664, 667, 45 P. 318 (1896))). However, if each offense, as charged, includes elements not included in the other, the offenses are different and multiple convictions can stand. *Calle*, at 777.

A person is guilty of fourth degree assault if, under circumstances not amounting to assault in the first, second, or third degree, he assaults another. RCW 9A.36.041(1). Three common-law definitions of assault are recognized: (1) an attempt, with unlawful force, to inflict bodily injury upon another, (2) an unlawful touching with criminal intent, and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting harm. *State v. Walden*, 67 Wn. App. 891, 893-94, 841 P.2d 81 (1992) (citing *State v. Hupe*, 50 Wn. App. 277, 282, 748 P.2d 263, *review denied*, 110 Wn.2d 1019 (1988); WPIC 35.50). Intent is a court-implied element of fourth degree assault. *State v. Davis*, 119 Wn.2d 657, 662, 835 P.2d 1039 (1992). A person is guilty of unlawful imprisonment if he knowingly restrains another person. RCW 9A.40.040. Unlawful imprisonment may be accomplished by physical force, intimidation, or deception. RCW 9A.40.010(1)(a). Neither of the latter two methods of committing unlawful imprisonment, intimidation or decep-

tion, requires any bodily injury or unlawful touching; neither do the deception means require proof of apprehension of harm. In addition, the element of restraint is not necessary for an assault but is necessary for unlawful imprisonment. Thus, because proof of an assault is not necessary to prove unlawful imprisonment, and because the elements of the two crimes are different, the "same evidence" test is satisfied.

Because the "same evidence" test is not necessarily dispositive, we next examine the history and intent of the statutes to determine whether there is any clear indication that the Legislature intended to punish both crimes as one, thereby overcoming the presumption that the Legislature intends to punish different crimes as separate offenses. *Calle*, 125 Wn.2d at 780.

The *Calle* court observed that the two crimes there at issue were enumerated in different chapters of the criminal code and that the statutes had different purposes. *Calle*, 125 Wn.2d at 780-82. Both of these indicia of legislative intent are present in this case. First, unlawful imprisonment is enumerated at RCW chapter 9A.40, entitled "Kidnapping, Unlawful Imprisonment, and Custodial Interference," whereas fourth degree assault is enumerated at RCW chapter 9A.36, entitled "Assault — Physical Harm." In addition, the purposes of these two crimes are different. The purpose of assault is to inflict bodily harm or to put another in apprehension of harm, *Walden*, 67 Wn. App. at 893-94, whereas the purpose of unlawful imprisonment is to restrain a person against his or her will. Thus, the statutes prohibiting these two types of conduct serve the purpose of deterring different types of injuries. The *Calle* court ended its analysis at this point, seemingly because the defendant in *Calle* did not raise a merger doctrine claim. As we have stated, we believe that when a violation of the merger doctrine is raised, it is properly treated with the third prong of the *Calle* analysis.

Frohs contends that the assault merged into the unlaw-

ful imprisonment because, he claims, he utilized the same physical force to restrain Smith as he used to assault her, and because, he claims, she suffered no separate injury or harm by reason of the assault.

Although we do not believe such to be dispositive, we first observe that according to Smith's testimony at trial, Frohs pushed her into a dresser, onto the floor, and onto the bed where he squeezed her mouth until it bled, all of which occurred before he refused to let her leave the room, and threatened to shoot her if she tried to leave. After Smith tried to leave anyway, Frohs held her down on the bed, and then ordered her to sit in a chair while he watched her. Thus, the worst of the assaults had already been inflicted before Smith was told that she would be shot if she tried to leave. We doubt that Smith would agree that she suffered no separate injury from the assault that was distinct from the injury of unlawful restraint.

More importantly, unlawful restraint is not a crime that is separated into degrees depending upon whether the restraint is accomplished by means of physical force, intimidation or deception, so that a stiffer penalty is not authorized merely because the physical force means are utilized in lieu of the less violent means of intimidation or deception. Accordingly, by its very terms, the merger doctrine does not apply. *See Vladovic*, 99 Wn.2d at 420-21 ("We reaffirm our holdings that the merger doctrine is a rule of statutory construction which *only* applies where the Legislature has *clearly* indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping")). (Emphasis added).

Frohs apparently has confused the exception to the merger doctrine with the doctrine itself. The exception is that if the offenses committed in a particular case have independent purposes or effects, they may be punished

separately even where the applicable statute (e.g., first degree kidnapping) requires proof of another felony (e.g., robbery) to elevate the crime to first degree kidnapping. *See Vladovic*, 99 Wn.2d at 421. Where the merger doctrine itself does not apply because proof of another crime (e.g., assault) is not necessary to raise the degree of the additional crime (e.g., unlawful restraint), the fact that a defendant may have used physical force, even the same physical force, to accomplish the unlawful restraint does not mean the merger doctrine is applicable. This is because the Legislature has not—by the enactment of degrees of the crime, each higher degree having stiffer penalties— already taken the "included" crime into account in setting the penalty. Thus, the courts are not precluded from imposing separate penalties for each conviction.

As the *Calle* court observed, the Legislature has itself validated the concept of multiple convictions arising out of the same criminal act or transaction in RCW 9.94A-.400(1)(a), which requires that multiple current offenses encompassing the same criminal conduct be treated as one crime in determining the defendant's offender score. *Calle*, 125 Wn.2d at 781. Frohs does not allege that his rights under this "same criminal conduct" statute have been violated.

For all of the above reasons, we reject Frohs' contention that the two crimes merged and that his conviction of both crimes violated the prohibition against double jeopardy.

## IV

Relying on *State v. Garcia*, 65 Wn. App. 681, 690, 829 P.2d 241, *review denied*, 120 Wn.2d 1003 (1992), Frohs also contends that the to-convict instruction for the fourth degree assault count violated the prohibition against double jeopardy because it did not distinguish the acts that constituted fourth degree assault from the acts that constituted unlawful imprisonment, thereby improperly

allowing the jury to find him guilty of both crimes by using the same acts of restraint, force, or threats. *Garcia* is inapposite. The two counts there charged, delivery of a controlled substance and possession with intent to deliver, were violations of the same statute, not violations of two separate statutes as in the instant matter, and the jury instruction there involved would have allowed the jury to convict the defendant of both delivery and intent to deliver the exact same item of contraband. Here, as has been demonstrated, even if the jury did convict Frohs of the two separate crimes based on the same act of assault, there was no double jeopardy violation. Thus, the claim of instructional error is without merit.

Affirmed.

BAKER, C.J., and ELLINGTON, J., concur.