# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78775-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| AMRO MUSTAFA ELTOUM-IBRAHIM, | UNPUBLISHED OPINION |
| Appellant. | FILED: November 18, 2019 |

LEACH, J. — Amro Eltoum-Ibrahim challenges his guilty plea as not voluntary. He claims that the court misinformed him about the maximum sentence he could receive. He also contends that his convictions for violation of a no-contact order and burglary violate his right against double jeopardy. Because the court correctly informed Eltoum-Ibrahim of the standard range sentence and the statutory maximum sentence applicable to him, he fails to establish that he made a misinformed guilty plea. And Washington's burglary antimerger statute allows convictions for both burglary and the predicate crime. So Eltoum-Ibrahim fails to show a double jeopardy violation. We affirm.

## BACKGROUND

In mid-March, 2018, Amro Eltoum-Ibrahim pleaded guilty to assault in the fourth degree against his wife.[1] After convicting him, Seattle Municipal Court imposed an order prohibiting him from threatening, contacting his wife, or "knowingly" entering, coming, or remaining "within 500 feet" of her residence.

Five days later, on March 31, 2018, police responded to a call and found Eltoum-Ibrahim inside his wife's apartment. The officers saw the front door heavily "damage[d] and ajar, having been forced open." They arrested Eltoum-Ibrahim on suspicion of burglary. His wife was out of the country at the time.

The State charged Eltoum-Ibrahim with residential burglary with domestic violence and domestic violence misdemeanor violation of a court order. In the prosecutor's summary, the State described the facts of the offense as follows: "Eltoum-Ibrahim broke through the entry door to the apartment of his estranged wife . . . in violation of the post-conviction" no-contact order.

Eltoum-Ibrahim agreed to plead guilty to residential burglary and violation of the court order. The statement he signed described the standard range for the burglary as from 12 months and a day to 14 months' incarceration. It identified any potential enhancements as "N/A." For the "Maximum Time and Fine" possible, it said 10 years and $20,000. The form also included a paragraph that read,

---

[1] Eltoum-Ibrahim stipulated to the facts of the State's certification of probable cause and the prosecutor's summary.

> If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendations may increase or a mandatory sentence of life imprisonment without possibility of parole may be required by law. Even so, I cannot change my mind and my plea of guilty to this charge is binding on me.

At the guilty plea hearing, the court said,

> Count I, that's the felony form, at the bottom of page 2, indicates there that the maximum penalty for this charge is 10 years imprisonment and a $20,000 fine with a standard range, based on your criminal history, from 12 months and a day to 14 months in custody. Count II is a gross misdemeanor, and so carries the maximum penalty of 364 days in custody and a $5,000 fine.

Eltoum-Ibrahim answered, "Yes, Your Honor." The court asked, "Do you understand the penalties for each of the charges?" He answered, "Yes, Your Honor."

The court discussed the sentencing recommendations. It told Eltoum-Ibrahim he could request that the sentence run concurrently to the sentence for a municipal court sentence. After describing the recommendations, the court asked, "Do you understand fully what everybody's position is going to be at the time of sentencing?" Eltoum-Ibrahim replied, "Yes, Your Honor." Finally, the court said, "And do you understand that the judge will listen to that recommendation for each of the charges, but he's under no obligation to follow it, and in the end, can do whatever they feel is appropriate for each matter?" Eltoum-Ibrahim replied, "Yes, Your Honor."

He pleaded guilty to both counts. In his statement, he said that on March 31, 2018, he "unlawfully entered and remained in the dwelling of [his wife] with

-3-

intent to commit a crime therein." The trial court imposed a judgment and sentence for both counts. Eltoum-Ibrahim appeals.

## ANALYSIS

Eltoum-Ibrahim challenges the validity of his guilty plea and asserts that the judgment and sentence violated double jeopardy. His arguments fail.

### Knowing, Intelligent, and Voluntary Plea

Eltoum-Ibrahim contends that his guilty plea was not voluntary because the court misadvised him about the maximum sentence for the offenses. He asks this court to allow him to withdraw his plea.

The Fourteenth Amendment's due process clause requires that a defendant's guilty plea be knowing, voluntary, and intelligent.[2] For a plea to be voluntary, the defendant must be informed of the direct consequences of his plea.[3] CrR 4.2(d) requires that the superior court determine that a plea "is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea" before accepting it. And the court must be "satisfied that there is a factual basis for the plea."[4]

One direct consequence is the length of the sentence the defendant faces.[5] A defendant facing a "more onerous sentence than anticipated" may successfully challenge his plea.[6] Under State v. Weyrich,[7] the trial court must

---

[2] State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006); Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

[3] State v. Turley, 149 Wn.2d 395, 398-99, 69 P.3d 338 (2003).

[4] CrR 4.2(d).

[5] Mendoza, 157 Wn.2d at 587.

[6] Mendoza, 157 Wn.2d at 587.

inform the defendant of the statutory maximum for the charged crime because it is a direct consequence of a guilty plea.

Eltoum-Ibrahim did not challenge his guilty plea below. Generally, a party may raise on appeal only those issues raised at the trial court.[8] But RAP 2.5(a)(3) allows a party to raise an issue for the first time on appeal if it involves a manifest error affecting a constitutional right. To assert manifest error, the issue before this court must affect the party's constitutional rights, and he must demonstrate that he suffered actual prejudice.[9] To show actual prejudice, the party must make a "'plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case.'"[10] If a defendant establishes that his guilty plea was involuntary, the constitutional error is manifest if he also demonstrates that he pleaded guilty because he misunderstood the sentencing consequences of his plea.[11]

Eltoum-Ibrahim had no prior felonies and an offender score of two. The standard range for a class B felony for a person in this category is 12 months plus one day to 14 months.[12] The maximum penalty for a class B felony is 10 years in prison and a $20,000 fine.[13] Eltoum-Ibrahim's plea statement properly described the applicable sentencing range and the maximum statutory penalty.

[7] 163 Wn.2d 554, 557, 182 P.3d 965 (2008).
[8] In re Det. of Brown, 154 Wn. App. 116, 121, 225 P.3d 1028 (2010).
[9] State v. Walsh, 143 Wn.2d 1, 8, 17 P.3d 591 (2001).
[10] State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (quoting State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)).
[11] Mendoza, 157 Wn.2d at 589.
[12] RCW 9.94A.510, .515.
[13] RCW 9A.20.021.

So he does not show that the court misinformed him. He entered into the plea agreement voluntarily.

Eltoum-Ibrahim asserts that the guilty plea "contained multiple inconsistent and erroneous statements of the possible maximum penalties" primarily because it provided that no enhancements to the standard range were applicable but also indicated that a mandatory sentence of life in prison "may be required by law." This assertion does not help him. The plea agreement and the court, during the plea hearing, ensured that Eltoum-Ibrahim understood the sentencing range that applied to him. And it informed him of the statutory maximum, as required by Weyrich.

The paragraph in his plea agreement that refers to a potential mandatory sentence of life is not part of the sentencing information. It states that the life sentence might apply if the circumstances changed and he was convicted of new crimes or the court learned of additional criminal history before sentencing. This paragraph notified him that a change in circumstances between his plea and sentencing could change the sentence the court could impose. It did not misinform him of the applicable sentence.

Eltoum-Ibrahim asserts that this court should view State v. Knotek[14] as controlling. But Knotek does not apply for two reasons. First, Division Two decided it before the Washington Supreme Court decided Weyrich, holding that courts must notify a defendant of both the applicable sentencing maximum and

---

[14] 136 Wn. App. 412, 425, 149 P.3d 676 (2006).

the statutory maximum prior to accepting a guilty plea.[15] Second, in Knotek, the court was considering the impact of a United States Supreme Court's decision issued after the defendant's guilty plea and before sentencing.[16] Here, nothing intervened to change the accuracy of the sentencing information provided to Eltoum-Ibrahim. So Knotek does not help him.

Eltoum-Ibrahim also asserts that State v. Buckman[17] requires this court to allow him to withdraw his plea. Because Buckman was 17 at the time of the crime, the court determined he should have been informed about the statutory maximum that applied to minors, not the one that applied to adults.[18] But, here, the court correctly identified a maximum sentence that applied to Eltoum-Ibrahim as an adult.

### Double Jeopardy

Eltoum-Ibrahim asserts that convictions for both residential burglary and violation of the no-contact order violate his right against double jeopardy.

The United States Constitution and the Washington Constitution protect a defendant from double jeopardy.[19] They prohibit the State from punishing an

---

[15] Weyrich, 163 Wn.2d at 557. Eltoum-Ibrahim did not discuss or cite to Weyrich.

[16] Knotek, 136 Wn. App. at 425 (discussing Blakely v. Washington, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)).

[17] 190 Wn.2d 51, 59-60, 409 P.3d 193 (2018).

[18] Buckman, 190 Wn.2d at 55-56, 59-60.

[19] U.S. CONST. amend. V; WASH. CONST. art. I, § 9; In re Pers. Restraint of Orange, 152 Wn.2d 795, 815, 100 P.3d 291 (2004).

offender multiple times for the same offense.[20] Claims of double jeopardy are questions of law that we review de novo.[21]

When a defendant's act supports convictions under two criminal statutes, a court considering a double jeopardy challenge "must determine whether, in light of legislative intent, the charged crimes constitute the same offense."[22] In this analysis, Washington courts first ask whether, "in light of legislative intent, the charged crimes constitute the same offense."[23] Second, if legislative intent is not clear, a court may apply the same-elements test described in Blockburger v. United States.[24] Third, the court may look to the merger doctrine.[25] The merger doctrine

> only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime[,] the State must prove not only that the defendant committed that crime but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes.[26]

The elements of residential burglary include the "intent to commit a crime against a person or property therein" and "ent[ry] or remain[ing] unlawfully in a dwelling other than a vehicle."[27] An antimerger statute applies to burglary. This statute reflects the legislature's expression of its intent that the predicate crime

---

[20] State v. Freeman, 153 Wn.2d 765, 770-71, 108 P.3d 753 (2005).
[21] Freeman, 153 Wn.2d at 770.
[22] Orange, 152 Wn.2d at 815.
[23] Freeman, 153 Wn.2d at 770 (quoting Orange, 152 Wn.2d at 815).
[24] 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); Freeman, 153 Wn.2d at 772.
[25] Freeman, 153 Wn.2d at 772-73.
[26] State v. Frohs, 83 Wn. App. 803, 806, 924 P.2d 384 (1996).
[27] RCW 9A.52.025(1).

and the burglary do not merge.[28] The State may prove the predicate crime against a person required by the residential burglary statute by establishing an offender's violation of a protective order.[29]

Eltoum-Ibrahim pleaded guilty to two crimes as part of his plea agreement with the State. He admitted that he entered his wife's apartment intending to commit a crime. He also admitted that he violated a protective order when he did this. Because the legislature clearly intended burglary not to merge with the underlying criminal conduct, the trial court's judgment and sentence do not violate double jeopardy.

Eltoum-Ibrahim asserts that the antimerger statute does not apply because the record does not establish that he entered the apartment with intent to commit a separate crime. So, he claims, while his entry into the home violated the prohibition from entering his wife's residence and satisfies the "'unlawful entry' component of residential burglary, it did not constitute the separate intent to commit a violation of the order inside her home." He appears to be challenging the evidence supporting his guilty plea. This argument does not help his double jeopardy claim.

He relies on State v. Stinton,[30] a case that did not involve a double jeopardy analysis. In Stinton, Division Two determined that a violation of a no-

---

[28] "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately." RCW 9A.52.050; see State v. Hoyt, 29 Wn. App. 372, 378, 628 P.2d 515 (1981).

[29] State v. Spencer, 128 Wn. App. 132, 140-41, 114 P.3d 1222 (2005).

[30] 121 Wn. App. 569, 89 P.3d 717 (2004).

contact order could also serve as the predicate offense for burglary.[31] The court in Stinton noted that the defendant violated the prohibition against entry and the prohibition against harassment, two separate provisions of the no-contact order.[32] The court did not hold that the State must establish that the defendant violated two provisions of a no-contact order in order to avoid offending double jeopardy with convictions for residential burglary and a violation of a no-contact order.

Also, Eltoum-Ibrahim appears to attack the sufficiency of the evidence of residential burglary supporting the court's acceptance of his plea. This argument does not establish that the two convictions violated double jeopardy. Eltoum-Ibrahim did not challenge the evidentiary support for the court's acceptance of the guilty plea below, and he does not do so explicitly here. He pleaded guilty to intending to commit a crime and to unlawful entry. He violated the no-contact order the moment he entered the 500-foot radius of his wife's apartment. He also broke in, damaged her door, and remained. So even if he intends to challenge the factual basis of his plea, his claim fails.

---

[31] Stinton, 121 Wn. App. at 574-75.
[32] Stinton, 121 Wn. App. at 575.

## CONCLUSION

We affirm. The convictions for residential burglary and violation of a no-contact order do not violate double jeopardy.

_Leach, J._

WE CONCUR:

_____

_Appelwick, C.J._