IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT OF:<br><br>BOBBY JOE EZRA PLAIN,<br><br>                      Petitioner. | No. 85661-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Bobby Joe Ezra Plain was convicted of one count of robbery in the first degree with a firearm enhancement and one count of assault in the second degree with a deadly weapon pursuant to a plea agreement with the State in 2010. Plain now seeks relief through a personal restraint petition, arguing that his convictions violate the double jeopardy clauses of the federal and state constitutions. Having first determined that Plain's petition is timely based on an exception to the one-year statutory time bar, we agree that his convictions violate the constitutional prohibitions against double jeopardy, conclude that they merge, and grant the petition.

FACTS

On February 8, 2010, Plain was charged with 10 separate criminal counts alongside 31 other individuals for events that took place between December 1, 2008 and January 15, 2010. On November 19, 2010, Plain negotiated with the

State to resolve the case by entry of a plea pursuant to *North Carolina v. Alford*[1] to reduced charges of robbery in the first degree with a firearm enhancement (robbery 1), a class A felony, and assault in the second degree (assault 2), a class B felony. Both crimes are most serious or "strike" offenses.[2] According to his plea agreement, and consistent with *Alford* pleas generally, Plain accepted that the court could review the probable cause (PC) affidavit to establish a factual basis for his plea. The PC affidavit prepared and filed by the State recites that, at approximately 2:00 a.m. on December 6, 2010, the victim and his cousin were exiting a restaurant when they saw Plain reach into the victim's car and remove a firearm from the interior console. The affidavit then notes that Plain "then began beating [the victim] with the gun while demanding all his money." A second individual used a different firearm to strike the victim, causing physical injury to his nose, eyes, and the inside of his lips. Without specifying which perpetrator took which items, the victim stated that over $2,300 in cash, a gold chain, and his firearm were stolen from him during the incident. He and his cousin were able to identify Plain later through a photo montage and indicated that he was the person who had taken the firearm out of the vehicle.

Based on his offender score and the seriousness level of the crimes of conviction, the court sentenced Plain to the high end of the standard range on each count for a total sentence of 204 months in prison. The sentence included a

---

[1] *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (a guilty plea where defendant maintains innocence but acknowledges that prosecution's evidence could result in conviction by jury of charged crime). Plain's plea agreement expressly stated, "I have reviewed the evidence to be presented at trial and I believe there is a substantial likelihood of conviction at trial and I wish to take advantage of a favorable plea offer made by the State."

[2] RCW 9.94A.030(32)(a), (b).

mandatory consecutive 60-month term for the firearm enhancement. Plain did not initiate a direct appeal of his conviction or sentence.

On October 11, 2017, Plain filed a CrR 7.8 motion seeking resentencing on the basis of youthfulness which the trial court deemed untimely, converted into a personal restraint petition (PRP) and transferred to Division Two of this court. The PRP was then stayed pending resolution of two cases in the state Supreme Court. While the original PRP was stayed, Plain filed a PRP in Division Two that raised claims of both a double jeopardy violation and an insufficient factual basis for the conviction.[3] Division Two transferred the second PRP to the state Supreme Court as successive. The Supreme Court ruled that the double jeopardy challenge was potentially exempt from the one-year time bar, but the claim pertaining to an insufficient factual basis was not, and it dismissed the PRP as a mixed petition. On December 27, 2021, Plain added the double jeopardy claim to the current petition via a supplemental brief. On February 28, 2022, the State moved to stay the petition pending the decisions in two other cases that involved separate PRPs with related issues, which was granted.[4] On November 29, 2022, Plain moved to lift the stay and withdraw the claim regarding youthfulness and sentencing. Division Two granted both motions and transferred the case to this Division for resolution of the remaining double jeopardy claim.

---

[3] This PRP is not in the record provided to this court, but the Supreme Court ruling dismissing that PRP lists the claims that Plain raised.

[4] The court also issued several other stays, both *sua sponte* and in response to motions from Plain, pending the rulings in various PRPs in other cases with relevant issues before the courts.

ANALYSIS

I.      Standards for Collateral Relief

PRPs allow petitioners to challenge the lawfulness of confinement, but relief through this avenue is extraordinary. *In re Pers. Restraint of Meirhofer*, 182 Wn.2d 632, 648, 343 P.3d 731 (2015). "'[T]he petitioner must meet a high standard before this court will disturb an otherwise settled judgment.'" *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013) (quoting *In re Pers. Restraint of Coats,* 173 Wn.2d 123, 132-33, 267 P.3d 324 (2011))). Plain's PRP alleges his convictions violate the constitutional right to be free of double jeopardy. If a petitioner seeks relief in a PRP based on a constitutional error, they must show that such an error occurred and that it resulted in actual and substantial prejudice. *In re Pers. Restraint of Williams*, 198 Wn.2d 342, 353, 496 P.3d 289 (2021). The petitioner must demonstrate actual and substantial prejudice by a preponderance of the evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004).

Generally, a PRP is time barred if filed more than one year after the judgment becomes final. RCW 10.73.090. However, the time bar does not apply if the judgment and sentence is invalid on its face or was otherwise issued by a court that lacked jurisdiction. *Id.* The Washington legislature has also provided six additional exceptions to the time bar, including when a petitioner is challenging their conviction on double jeopardy grounds. RCW 10.73.100(3). The State properly concedes that this PRP falls within an exception to the time bar. Therefore, as a threshold matter, this PRP is not time barred despite being filed

more than one year after Plain's judgment was final because he asserts a double jeopardy violation.

Additionally, Plain's petition is not improperly successive. Under RAP 16.4(d), "[n]o more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown." Claims dismissed as part of a mixed petition are not barred in subsequent petitions because they have not yet been heard on their merits. *In re Pers. Restraint of Hankerson*, 149 Wn.2d 695, 704, 72 P.3d 703 (2003). Plain previously challenged his convictions on the basis of double jeopardy in a collateral attack, but the state Supreme Court dismissed the claim as part of a mixed petition without reaching the merits. Plain supplemented this petition with that unresolved issue only after the dismissal by the Supreme Court.

II.     Double Jeopardy

"Double jeopardy is a constitutional limitation on the power of the court to place a person in jeopardy multiple times for the same offense." *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 813, 383 P.3d 454 (2016). Although the State may impose separate punishments for different offenses, our federal and state constitutions prevent multiple convictions and punishments for the same offense. *State v. Wade*, __ Wn. App. 2d __, 534 P.3d 1221, 1234 (2023); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. When an individual is charged with two crimes, a double jeopardy violation is avoided when the lesser included offense merges into the more serious offense. *State v. Muhammad,* 194 Wn.2d

577, 618, 451 P.3d 1060 (2019) (explaining merger doctrine (quoting BLACK'S LAW DICTIONARY 1184 (11th ed. 2019))).

We review double jeopardy claims de novo, considering legislative intent. *State v. Freeman*, 153 Wn.2d 765, 770-71, 108 P.3d 753 (2005). "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004).

> We follow four analytical steps to determine legislative intent regarding whether cumulative punishment is authorized: (1) consideration of any express or implicit legislative intent, (2) application of the *Blockburger*,[5] or "same evidence" test, (3) application of the "merger doctrine," and (4) consideration of any independent purpose or effect that would allow punishment as a separate offense.

*State v. Arndt*, 194 Wn.2d 784, 816, 453 P.3d 696 (2019) (quoting *Freeman*, 153 Wn.2d at 771-73)). "If legislative intent to allow separate punishments can be found in any of the four steps of the analysis, then there is no double jeopardy violation." *State v. Heng*, 22 Wn. App. 2d 717, 732, 512 P.3d 942 (2022).

### A.     Express Legislative Intent

So long as it abides by constitutional limitations, the legislature "has the power to define criminal conduct and assign punishment to it." *State v. Kier*, 164 Wn.2d 798, 803, 194 P.3d 212 (2008). Double jeopardy is not offended if the legislature approved cumulative punishments for the crimes. *Freeman,* 153 Wn.2d at 771. "Evidence of legislative intent may be clear on the face of the statute, found

---

[5] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

in the legislative history, the structure of the statutes, the fact the two statutes are directed at eliminating different evils, or any other source of legislative intent." *Id.* at 773.

The statutes under which Plain was convicted, RCW 9A.56.200(1)(a)(ii)[6] and RCW 9A.36.021(1)(c),[7] do not explicitly authorize separate punishments. This is in contrast to statutes such as RCW 9A.52.050, commonly referred to as the burglary anti-merger statute, which expressly provides that a crime committed in the commission of a burglary "may be punished therefor as well as for the burglary." The State argues that the legislature implies an intent to treat the crimes separately by assigning them to different chapters of the Revised Code of Washington; robbery is found in chapter 9A.52 RCW, which pertains to certain property crimes, and assault is found in chapter 9A.36 RCW, which addresses crimes against persons.[8] The location of statutes within various chapters of the RCW is evidence which may demonstrate the legislature's intent to punish them as separate offenses. *State v. Calle*, 125 Wn.2d 769, 780, 888 P.2d 155 (1995) (finding evidence of legislative intent to punish incest and rape as separate offenses because incest is defined under family offenses and rape is defined under sex offenses). Similarly, legislative intent to punish crimes separately may be shown when the crimes serve different purposes. *Id.* at 780-81 (explaining

---

[6] "A person is guilty of robbery in the first degree if . . . [i]n the commission of a robbery or of immediate flight therefrom, [they] . . . [d]isplay[] what appears to be a firearm or other deadly weapon."

[7] "A person is guilty of assault in the second degree if [they], under circumstances not amounting to assault in the first degree . . . [a]ssault[] another with a deadly weapon."

[8] Plain does not address this argument in his reply. His analysis of legislative intent in both his opening and reply briefs is confined to an acknowledgement that "[t]here are no express statutory provisions permitting multiple punishments" for the offenses before he proceeds to analyze the "same evidence" test and the merger doctrine.

- 7 -

legislation criminalizing incest is intended to prevent genetic birth defects and promote family harmony, while legislation criminalizing rape is intended to deter violence and physical injury).

However, the doctrine of legislative acquiescence lends credibility to the proposition that the legislature intended assault 2 to merge with robbery 1. "'[T]his court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision.'" *State v. Otton*, 185 Wn.2d 673, 685-86, 374 P.3d 1108 (2016) (quoting *City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)). *Freeman* held that assault 2 merges into robbery 1 while assault in the first degree does not because it carries a much larger penalty than robbery 1. 153 Wn.2d at 778. Since that case was decided in 2005, the legislature has twice amended the assault 2 statute without reference to the *Freeman* decision. *See Kier*, 164 Wn.2d at 805; LAWS of 2007, ch. 79, § 2; LAWS OF 2011, ch. 166, § 1. The absence of action by the legislature could demonstrate approval for *Freeman*'s act of merging assault 2 into robbery 1. Alternatively, the acquiescence could be toward the court's practice of considering the facts of each case individually without creating a per se rule. After a similar discussion regarding legislative acquiescence following *Freeman*, *Kier* also held that assault 2 properly merges into robbery 1. 164 Wn.2d at 805. However, in the absence of any express language regarding legislative intent, we next turn to an application of the *Blockburger* test.

B.      *Blockburger/*Same Evidence Test

When legislative intent is unclear we employ the test from *Blockburger*, which considers whether the crimes are the same in law and fact.  *Calle*, 125 Wn.2d at 777-78.[9]  "If each crime contains an element that the other does not, we presume that the crimes are not the same offense for double jeopardy purposes." *Freeman*, 153 Wn.2d at 772.  Said another way, the *Blockburger* test considers whether each charge requires proof of a fact that the other does not.  *Orange,* 152 Wn.2d at 817.  Double jeopardy is violated when the evidence that supports a conviction on one crime would have also been sufficient to sustain a conviction on the other crime.  *Id.*  When applying the *Blockburger* test, we consider whether the crimes, *as charged and proved* rather than in the abstract, are the same in law and fact.  *Freeman*, 153 Wn.2d at 777.  If so, "they may not be punished separately absent clear legislative intent to the contrary."  *Id*.  As the *Blockburger* test is a tool of statutory construction meant to be used to determine legislative purpose, it "should not be controlling where there is a clear indication of contrary legislative intent."  *Calle*, 125 Wn.2d at 778.  Again, there is no such clarity here.

At this stage in the analysis, we must consider the evidence that was actually used to convict Plain, not simply the statutory elements of the crimes on a purely conceptual level.  Plain avers that the State used the same evidence to support the convictions for both the assault and the robbery, i.e., Plain hit the victim with a handgun, demanded all of his money, and took his personal property.  In

---

[9] The *Blockburger* test is also variably referred to as the "same elements" test and the "same evidence" test.  *See Orange*, 152 Wn.2d at 816 n.4 (referencing *Calle*, 125 Wn.2d at 777, *State v. Roybal*, 82 Wn.2d 577, 580-81, 512 P.2d 718 (1973), and *Blockburger*).

contrast, the State argues that each crime requires an element that the other does not, as assault does not require a taking of personal property and robbery does not necessarily involve an assault with a deadly weapon, just the display of one. Robbery, as defined by RCW 9A.56.190, requires that the State prove that Plain used or threatened to use "immediate force, violence, or fear of injury" to unlawfully take property from another person. Because the State charged Plain with robbery 1 under RCW 9A.56.200(1)(a)(ii), it also had to prove that Plain "display[ed] what appears to be a firearm or other deadly weapon" during the commission of the robbery. To convict Plain of assault 2 as the State elected to charge him under RCW 9A.36.021(1)(c), it had to prove that the assault was committed "with a deadly weapon."

The PC declaration prepared and filed by the State, to which Plain stipulated for purposes of the entry of his *Alford* plea, contains only one sentence that describes the conduct the State relied on to support both convictions on the strike offenses. The affidavit states that Plain "began beating [the victim] with the gun while demanding all his money." While the phrase "beating [the victim] with the gun" satisfies the entirety of the statutory requirements of assault 2 and the specific element of displaying a firearm under RCW 9A.56.200(1)(a)(ii), those facts alone are not sufficient to demonstrate robbery. Robbery in any degree also requires the unlawful taking of the victim's property, which was met when Plain "demand[ed] all" the victim's money. Robbery 1 does not *require* an assault with a deadly weapon, but that act would satisfy one of the methods by which the crime can be committed under the language of the statute, and, more specifically, it meets the

- 10 -

elements of RCW 9A.56.200(1)(a)(ii), which is how the State elected to charge Plain. While it is true, then, as Plain asserts, that the facts underlying the robbery 1 conviction also proved the assault 2, the opposite is not true: the evidence used to prove the assault 2 conviction, the earlier fragment of the sentence describing the beating, does not also prove the robbery 1. The test requires that *each* crime contain an element or proof of a fact that the other does not. Assault 2 in this case does not require proof of an element or fact that is not required for robbery 1 and, accordingly, the *Blockburger* test fails. However, the *Blockburger* test "is not dispositive of the question whether two offenses are the same." *In re Pers. Restraint of Percer*, 150 Wn.2d 41, 50-51, 75 P.3d 488 (2003). In *Freeman*, the petitioner conceded that the crimes were not based on the same evidence, but the court did not end its inquiry there and proceeded to find a double jeopardy violation based on the merger doctrine. 153 Wn.2d at 776-78. Consistent with controlling case law, we next consider legislative intent through the merger doctrine.

### C. Merger Doctrine

The merger doctrine is a tool used to determine legislative intent even when two crimes have different elements. *Id.* at 772. It applies "when the degree of one offense is raised by conduct separately criminalized by the legislature" and "we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." *Id.* at 772-73. Again, we "look at how the offenses were charged and proved" rather than the individual crimes in the abstract. *State v. Whittaker*, 192 Wn. App. 395, 411, 367 P.3d 1092 (2016).

Plain asserts that the assault 2 merges with the robbery 1 through a direct application of *Kier,* wherein our Supreme Court held that the "merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree because being armed with or displaying a firearm or deadly weapon to take property through force or fear is essential to the elevation." 164 Wn.2d at 806. Again, three years prior to *Kier*, *Freeman* also held that the petitioner's assault 2 and robbery 1 charges merged. 153 Wn.2d at 778. In response, the State argues that "the assault was not necessary to elevate the crime of robbery to robbery in the first degree" and the robbery was complete upon Plain taking the firearm from the victim's console.

The State is correct that an assault 2 as charged is not required in order to elevate the robbery to the first degree. For example, RCW 9A.56.200(1)(a)(i) provides that robbery 1 could be reached if Plain had simply been armed with a deadly weapon during the commission of the robbery, whether or not the victim knew the weapon was present. However, the State exercised its discretion to charge Plain under RCW 9A.56.200(1)(a)(ii) ("displays what appears to be a firearm or other deadly weapon") and "once the State has charged the defendant, short of a timely amendment, the State is stuck with what it chose." *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 527, 242 P.3d 866 (2010). It is also bound by the facts alleged in the PC affidavit which, again, was drafted by a deputy prosecuting attorney on behalf of the State, because Plain entered an *Alford* plea expressly based on those facts.

Plain was charged with assault 2 under RCW 9A.36.021(1)(c) which specifies that the individual "[a]ssaults another with a deadly weapon." During oral argument before this court, the State asserted that "the robbery was accomplished as soon as [Plain] obtained the weapon."[10] In making this argument, the State presumes a chronology of events that is not supported by the PC affidavit, which alleges that Plain "began beating [the victim] with the gun *while* demanding all his money." (Emphasis added.) This argument may have been persuasive if the State had charged the robbery 1 under RCW 9A.56.200(1)(a)(i), which provides that a person engaged in the criminal conduct while "armed with a deadly weapon," but the PC declaration specifies that Plain did not demand the victim's money until, and *while,* he was beating the victim with the gun. By statutory definition, a robbery requires that an accused person "unlawfully takes personal property . . . by the use or threatened use of immediate force, violence, or fear of injury" and that "[s]uch force or fear must be used to obtain or retain possession of the property." RCW 9A.56.190. The State met the definition of "assaults another with a deadly weapon" under assault 2 by establishing that Plain "began beating [the victim] with the gun." It also used that beating to elevate the robbery charge to first degree, simply by using the next clause in the same sentence; ". . . began beating [the victim] with the gun *while* demanding all his money." (Emphasis added.)

Again, at oral argument before this court, the State asserted that Plain's retention of the gun created an "implicit threat of force, which makes it a robbery"

_____

[10] Wash. Ct. of Appeals oral argument, *In re Pers. Restraint of Plain*, No. 85661-8-I (Nov. 9, 2023), at 15 min., 2 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023111143/?eventID-2023111143.

and that "the use of force, the threat of force can be in the retention of the object."[11] This assertion fails to differentiate between theft of a firearm and the force or intimidation that the statute requires in order for a theft or taking to constitute a robbery under RCW 9A.56.190. There must be some evidence of the fear or intimidation, as to acts or knowledge giving rise to those responses, or that the victim actually experienced those feelings; the PC affidavit here provides none. The only evidence the State could have relied on to satisfy the requirements of the crime in the subsection of the statute it opted to pursue is the single sentence regarding Plain beating the victim with the gun, which reasonably meets the force or fear requirement in the definition of robbery; there are no other facts in the PC affidavit regarding display of a firearm, which is an essential element under RCW 9A.56.200(1)(a)(ii). And again, this specific element of robbery 1, as set out in the subsection under which the State elected to charge Plain, distinguishes that manner of committing the crime from the one set out in RCW 9A.56.200(1)(a)(i), which only requires that the accused was armed with a deadly weapon at the time of the robbery regardless of whether it was used in the force or threat of force to effectuate the taking. Accordingly, the plain language of the charging document and State's PC affidavit establish that the only evidence of force or fear necessary to support the robbery 1 conviction was the same evidence that supported the assault 2. Therefore, the assault 2 was used to elevate the robbery to the first degree, and we presume that the legislature intended to punish offenders of these crimes through the heightened penalties of robbery 1 rather than punish the crimes

---

[11] Wash. Ct. of Appeals oral argument, *supra*, at 10 min., 5 sec. to 10 min. 24 sec.

separately. In this case, on this record, the assault 2 and robbery 1 convictions merge.

D.    Independent Purpose

The State further asserts that the facts establish that the assault 2 had an independent purpose or intent from the robbery 1 as Plain was convicted under RCW 9A.56.200(1)(a)(ii), for "[d]isplay[ing] what appears to be a firearm or other deadly weapon," and the robbery was complete upon Plain's display of the firearm to the victim. "[E]ven if on an abstract level two convictions appear to be for the same offense or for charges that would merge, if there is an independent purpose or effect to each, they may be punished as separate offenses." *Freeman*, 153 Wn.2d at 773. The independent purpose exception is met when the crime "injure[s] the person or property of the victim or others in a separate and distinct manner from the crime for which it also serves as an element." *Arndt*, 194 Wash.2d at 819 (quoting *State v. Harris*, 167 Wn. App. 340, 355, 272 P.3d 299 (2012)). "[U]sing force to intimidate a victim into yielding property is often incidental to [a] robbery" and applying more force than is strictly necessary to accomplish the crime does not qualify as an independent purpose. *Freeman*, 153 Wn.2d at 779. Rather, "[t]he test is whether the unnecessary force had a purpose or effect independent of the crime." *Id.*

The State avers that the assault was not necessary to complete the robbery and "was committed only for the gratuitous infliction of injury and, perhaps, to facilitate the taking of even more property." Plain asserts that there was no independent purpose or effect of the assault as it was committed simultaneously

with the robbery, which puts his case in direct contradiction to those the State cites to support its argument.[12]    As established herein, regardless of the precise provision of the statute under which the State chose to charge Plain, it is relying on a timeline of events that does not exist in the facts the prosecutor prepared and presented in the PC declaration.  The PC declaration alleges that Plain "began beating [the victim] with the gun *while* demanding all his money."  (Emphasis added.)  These are the only facts on which the State may rely to make its argument as they are the only ones set out in the 22-page PC affidavit that could possibly support the crimes the State elected to include in the amended information.  During oral argument, the State argued unconvincingly that Plain's taking and subsequent retention of the handgun was sufficient to constitute a "display" as required by RCW 9A.56.200(1)(a)(ii).[13]    It attempts to put space and time between Plain's actions of taking the gun and beating the victim in the head with it by asserting that the actions were part of a "sequence"[14] rather than simultaneous, but it fails to

---

[12] Plain differentiates the four cases relied on by the State as follows: *State v. Vladovic*, 99 Wn.2d 413, 662 P.2d 853 (1983), held that the robbery did not merge with the kidnapping because the injuries of each crime involved different people, whereas in this case, the assault and robbery involved the same victim, *Freeman*, 153 Wn.2d at 773-78, actually supports Plain's position because it held that assault 2 merges with robbery 1, which are the same convictions Plain is challenging here, *State v. Frohs*, 83 Wn. App. 803, 924 P.2d 384 (1996), involved a charge of unlawful restraint, which is a crime that is not separated into degrees with the potential for elevation based on another offense, such as the assault and robbery convictions Plain is challenging, and *State v. Knight*, 176 Wn. App. 936, 309 P.3d 776 (2013), which involved two separate assaults at different points in time by a different person, using a different firearm, whereas Plain's convictions stemmed from the same incident.

[13] Wash. Ct. of Appeals oral argument, *supra*, at 15 min., 7 sec. ("[Plain] had obtained the weapon and by holding onto it, displayed it, and therefore retained it.").  Wash. Ct. of Appeals oral argument, *supra*, at 16 min., 47 sec. ("[Plain] takes the gun, he's holding it, it's visible to everybody, that's the display.  He's now retained it, and that's the robbery.").

Notably, nothing in the PC affidavit supports the State's assertion that the firearm stolen from the vehicle was "visible to everybody."

[14] Wash. Ct. of Appeals oral argument, *supra*, at 16 min., 30 sec.

demonstrate how the record before this court supports such a reading of the evidence.

The State avers that Plain "relies on factual assumptions outside of the record" when he says that "he hit another person with a firearm *during* a robbery," but that is precisely what the factual record indicates. (Emphasis added.) Again, the only record available to us is entirely comprised of statements drafted by the State. While the State may now disagree with the phrasing employed by the prosecutor in the preparation of the PC affidavit, it is bound by those words. Further, the State provides no evidentiary support for its assertion that Plain either assaulted the victim "only for gratuitous infliction of injury" or "to facilitate the taking of even more property." Instead, the simultaneous or near simultaneous actions described in the record indicate that the assault aided the robbery, even if more force was used than strictly necessary to accomplish the robbery based on the statutory elements. Since there was no independent purpose or effect of the assault, the merger doctrine applies and the assault 2 conviction must be vacated as the lesser of the two crimes of conviction.

Plain meets the burden of demonstrating that this double jeopardy violation is actually and substantially prejudicial. To meet this burden, the petitioner must show "'not merely that the errors at [their] trial created a *possibility* of prejudice,' but that the outcome would more likely than not have been different had the alleged error not occurred." *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982)). Plain's conviction for

assault 2 added another strike offense to his record, both increasing his offender score in this case and increasing his risk under the persistent offender accountability act[15] should he be convicted of another strike offense in the future. Because the outcome of his sentence would clearly have been different if he had not been convicted of both the robbery 1 and assault 2 in violation of the prohibition against double jeopardy he has established actual and substantial prejudice.

Plain's petition is granted. We vacate the conviction for assault in the second degree and remand for resentencing.

WE CONCUR:

---

[15] RCW 9.94A.570; RCW 9.94A.555; RCW 9.94A.030(37).